PERCY ROTH, Plaintiff, *v.* MARY E. ROTH, Defendant.

(Supreme Court, Kings Special Term, October, 1916.)

Marriage — action to annul — divorce — jurisdiction of Supreme Court when void — when marriage not annulled for fraud — contracts.

> Where in an action to annul a marriage it appeared that a decree of absolute divorce in favor of defendant's former husband provided that it should not be lawful for her to marry again until plaintiff in that action was actually dead, and it further appears that at the time of her marriage in 1903 to plaintiff herein her former husband was living and that she had not received permission from the court to marry again, the marriage between plaintiff and defendant was and is void.

The jurisdiction of the Supreme Court to annul marriages is purely statutory except in those cases in which annulment is sought for some cause for which chancery has power to cancel or avoid all contracts, such as lunacy or fraud; in which cases jurisdiction is inherent.

While in the present action the court has inherent jurisdiction to declare the marriage absolutely void, yet it appearing that the facts were not made known to plaintiff who upon a discovery of them thirteen years after the marriage separated from defendant, a decree for the annulment of the marriage on the ground of fraud will be granted.

A marriage will not be annulled for fraud unless the facts misrepresented or concealed go to the very essence of the contract.

ACTION for annulment of marriage.

George F. Allison, for plaintiff.

No appearance for defendant.

BENEDICT, J. This action for the annulment of a marriage presents what seems to be a novel question. The parties were married on April 25, 1903, in New York state. It appears that the defendant, the wife, had been previously married, and had been divorced from her former husband, because of her adultery, by a judgment of the Supreme Court of this state entered on January 15, 1892, in the office of the clerk of Oneida county, by which judgment it was provided that it should be lawful for the plaintiff in that action to marry again, but that it should not be lawful for the defendant therein (the defendant in the case at bar) to marry again until the plaintiff in that action should be actually dead. It also appeared that such former husband of the defendant was living at the time of the marriage between plaintiff and defendant and was alive up to June last. The defendant has not received

permission from the court to marry again. These facts were unknown to the plaintiff at the time of the marriage, and upon discovery of them in March, 1916, the plaintiff separated from the defendant.

At the time of such divorce the Revised Statutes contained the following provision: " Whenever a marriage has been or shall be dissolved, pursuant to the provisions of this article, the complainant may marry again during the lifetime of the defendant; but no defendant convicted of adultery shall marry again until the death of the complainant, unless the court in which the judgment of divorce was rendered shall in that respect modify such judgment, which modification shall only be made upon satisfactory proof that the complainant has remarried, that five years have elapsed since the decree of divorce was rendered, and that the conduct of the defendant since the dissolution of said marriage has been uniformly good." R. S. part II, chap. 8, tit. I, § 49, as amd. by Laws of 1879, chap. 321.

By Laws of 1897, chapter 452, the foregoing provision was amended by striking out the words " that the complainant has remarried," and as so amended it remained in force until after the marriage of the plaintiff and defendant in this action, in fact until the adoption of the Consolidated Laws, to which it was transferred without any change material to this action. Dom. Rel. Law (Laws of 1909, chap. 19), § 8. Section 1761 of the Civil Code (now repealed) covered in part the same ground as the provision of the Revised Statutes just quoted, but did not repeal the same. *Peck* v. *Peck,* 8 Abb. N. C. 400.

At the time of the divorce it was also provided:

" No second, or other subsequent, marriage, shall be contracted by any person, during the lifetime of any former husband or wife of such person, unless,

" 1. The marriage with such former husband or wife, shall have been annulled or dissolved, for some cause other than the adultery of such person. * * *

" Every marriage contracted in violation of the provisions of this section, shall, except in the case provided for in the next section, be absolutely void." R. S. part II, chap. 8, tit. I, § 5. The reference to the next section is to section 6, which provides for cases where one spouse has married after the absence of the other for five years.

This provision was adopted into the Domestic Relations Law of 1896 (Laws of 1896, chap. 272, § 3), in the following form:

"A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

" 1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person." Then follow other exceptions not material here.

This provision continued in force until the Consolidated Laws, into which it was adopted without change. Dom. Rel. Law (Laws of 1909, chap. 19), § 6.

Thus we have had during the entire period covered by the transactions above referred to a statutory provision that a person who has been divorced for his or her adultery shall not marry again during the lifetime of the innocent party, without leave of the court in certain cases, and making a marriage contracted by such a divorced person absolutely void. There can be no doubt, therefore, but that the marriage between plaintiff and defendant was and is void. *Cropsey* v. *Ogden,* 11 N. Y. 223; *Haviland* v. *Halstead,* 34 id. 643; *Matter of Borrowdale,* 28 Hun, 336; *Matter of Thorp,* 31 Misc. Rep. 579.

The question which presents itself for solution, however, is whether the court has jurisdiction to grant a decree declaring such marriage void. The cases in which the court is authorized to give judgment of annulment of marriage are prescribed by sections 1742 and 1743 of the Code of Civil Procedure. The only applicable provisions of these sections are subdivisions 2 and 4 of section 1743, which with the preamble read as follows:

"An action may also be maintained to procure a judgment, declaring a marriage contract * * * void and annulling the marriage, for either of the following causes, existing at the time of the marriage: * * *

" 2. That the former husband or wife of one of the parties was living, and that the marriage with the former husband or wife was then in force. * * *

" 4. That the consent of one of the parties was obtained by force, duress or fraud."

This case does not, it seems, come under the provisions of subdivision 2. Although the defendant was at the time of her marriage to plaintiff legally incapable, because of the existence of her former husband, of entering into the marriage state, and the marriage was absolutely void, yet as the former marriage was not then in force, this provision does not seem to give jurisdiction to the court to annul the subsequent marriage. It is well settled that the jurisdiction of this court to annul marriages depends wholly upon statute, except in those cases in which annulment is sought for some cause for which chancery has power to cancel or avoid all contracts, such as lunacy or fraud. *Griffin* v. *Griffin,* 47 N. Y. 134, 138. In such cases, however, jurisdiction is inherent. Id.; *Fisk* v. *Fisk,* 6 App. Div. 432, 434. It seems to me that in a case of this kind, where the marriage is absolutely void, the court has

inherent power to so declare it. This conclusion seems to be supported by the early decisions of the Court of Chancery in this state. *Wightman* v. *Wightman*, 4 Johns. Ch. 343; *Ferlat* v. *Gojon*, 1 Hopk. Ch. 478; *Burtis* v. *Burtis*, Id. 557; *Perry* v. *Perry*, 2 Paige, 501, 504–506. The Court of Appeals has, however, indicated some doubt as to whether the case of a marriage void because one of the parties had a former husband or wife living is a case of statutory or inherent jurisdiction. *Griffin* v. *Griffin, supra*, 140. See, also, *Berry* v. *Berry*, 130 App. Div. 59.

For these reasons I prefer to base the judgment of annulment on the ground of fraud, as the facts are, in my opinion, amply sufficient to sustain it.

There is, it is true, neither allegation nor proof that defendant made any false representation as to her status, other than the fact that she had resumed her maiden name, under which she was married to plaintiff. But the court is justified in concluding from the testimony that she did not disclose to the plaintiff the facts which rendered her incapable of contracting a valid marriage, or any fact which would put him on inquiry. Is the case, therefore, one which can be brought within the rule that suppression of the truth, where there was a duty to speak, is fraud, and were the facts concealed so material to the contract as to justify an annulment for fraud? Both these questions can, I think, be answered in the affirmative, and the same line of reasoning applies to both. Capacity to contract is one of the most important elements in marriage. The fact that one assumes to enter into the marriage state is, in itself, almost a representation that one is under no legal disability to do so, that is, no disability which would render the marraige void, as distinguished from voidable. The consequences of

a void marriage, entered into innocently by one of the parties, are so serious to that party, and to the offspring, if any, of the union, and so detrimental to the public welfare that a solemn declaration by each party that there is no legal impediment is ordinarily required as part of the marriage service, and those present as spectators are invited to disclose any objection known to exist. While it is true, as stated in many cases, that a marriage will not be annulled for fraud, unless the facts misrepresented or concealed go to the very essence of the marriage contract, it needs no argument to show that facts which affect the validity of the marriage and the legitimacy of children do go to the very essence of the contract, and that the misrepresentation or concealment thereof constitutes ground for annulling the marriage. There is, therefore, no doubt in my mind but that the defendant was under a duty to disclose her former marriage and the fact that she had been divorced for her adultery and was incapable of marrying again in this state, and that her failure to do so amounted to the concealment of material facts. If after such disclosure the plaintiff still-wished to marry her, she could have applied to the court for leave to marry, and the marriage then would have been valid. Support for granting a decree of annulment for fraud under such circumstances is found in the case of *Blank* v. *Blank*, 107 N. Y. 96. Decision and interlocutory judgment of annulment signed.

Judgment accordingly.