ROBERT J. SMITH, Plaintiff, *v.* FLORENCE H. SMITH, Defendant.

(Supreme Court, Kings Special Term for Motions, June, 1920.)

Marriage — who entitled to a judgment of annulment — incompetent persons — fraud.

> A man who at the time of his proposal of marriage asks the woman if there was anything that would make their life unhappy, is entitled to a frank and full disclosure as to her mental condition.

> When her answer to his question is "No" and it appears that she had been treated for a mental or nervous disorder in an institution, that her sister was confined in a hospital for the insane and that a brother had been treated in a hospital for a mental disorder, and within a year after the marriage she became insane and was confined in several institutions during a period of three years and since has been continually an inmate of a state hospital, incurably insane, suffering from *dementia praecox,* the husband is entitled to a judgment for the annulment of the marriage on the ground of fraud in the concealment of material facts.

MOTION to confirm referee's report in an action for an annulment of marriage.

Glore & Keck (Frederick A. Keck, of counsel), for plaintiff.

Milton Hertz, designee on behalf of the defendant.

FAWCETT, J. This is a motion to confirm referee's report in an action for an annulment of marriage.

The plaintiff sets forth two causes of action: *First,* that he was induced to marry the defendant by reason of her fraudulent misrepresentations that she was of sound mind and body and fully competent to enter into the marriage state; *Second,* that at the time of the marriage the defendant was insane.

The report of the learned referee that the second cause of action cannot be maintained by this plaintiff is hereby confirmed. An action to annul a marriage is allowed and limited by statute. The only person who can sue to have the marriage annulled on the ground that one of the parties was a lunatic at the time the marriage was entered into, is the insane person, after restoration to sanity, or a relative of that person who has an interest to avoid the marriage, or, by permission of the court, a party suing as a next friend of the incompetent. Dom. Rel. Law, § 7; Code Civ. Pro. §§ 1747, 1748; *Walter* v. *Walter,* 217 N. Y. 439.

That leaves for consideration the first cause of action, wherein plaintiff seeks to annul the marriage on the ground that plaintiff was induced to marry the defendant by reason of her fraudulent representations that she was of sound mind and body and fully competent to enter into the marriage. The learned referee, in an able opinion, reviews the leading authorities for the annulment of marriage on the ground of fraud, and presents the question raised on this issue for the decision of the court, namely: " Was the silence of the defendant concerning the facts, that a brother and sister had been treated for a mental disease in a hospital for the insane, that the sister was

still confined in such hospital, and that she herself had been treated for a mental or nervous disorder in an institution in Canada, a sufficient fraud upon this plaintiff to warrant the annulment of this marriage?''

The courts of this state do not seem to have passed on the precise question involved in this case.

It appears from an examination of the testimony that at the time of plaintiff's proposal of marriage to defendant, he asked her the question, '' Is there anything going to come up between us to make life unhappy,'' to which she answered, '' No.'' They were married in August, 1913. Defendant became insane in July, 1914, and was confined in several institutions between then and 1917, from which time she has been continuously in the New York State Hospital for the Insane at Kings Park, incurably insane, suffering from *dementia præcox.* That about a year prior to her marriage she had been treated for a nervous or mental disorder in St. John's Hospital in Canada, of which fact plaintiff was wholly ignorant until about a year after their marriage. Her brother and sister were insane and committed to institutions, knowledge of which did not come to plaintiff until a year and a half after his marriage to defendant. Defendant also had a deranged uncle and a demented grandmother. A relative advised defendant to inform plaintiff of her illness in Canada and another relative told defendant to tell plaintiff of her sister being insane, and she promised to do so. A friend asked defendant the question: '' Is there anything you should tell him [plaintiff] concerning your physical health,'' and she replied, '' There is nothing wrong.'' She acted strangely and illogically at times during the period of their engagement to marry. Doctor Cusack, under whose care defendant had been during the past six months, testified that, in his opinion, the nervous or mental disorder, for which defendant was treated in Canada, was

the beginning of the insanity precipitated at the time of the death of defendant's mother and later further precipitated by the birth of her child; that defendant might have had some mental disorder or might have been insane at the time of her marriage to plaintiff, and have been in a period of remission or have known she was insane and have concealed it, as such a person would have a propensity to conceal such knowledge.

Marriage being a mutual and voluntary compact, based on mutual regard and affection to live together as husband and wife as long as both shall live, a confidential relationship exists between those contemplating marriage that demands frankness and truthfulness as to all facts that would affect the decision of either party. ⹁ Persons who have agreed to marry owe an affirmative duty to inform each other of all facts material to their contemplated marriage, not alone because such facts may affect the decision of the contracting parties, but the state and community has an interest by reason of the property rights involved and the possible issue of the union. And if either party is unfitted by age, physical condition, mental incapacity, or legal disability from being joined in lawful wedlock, that party should not remain silent; there is a clear duty to speak, as such facts are of the very essence of the contract of conjugal union. Silence implies marriageability.

A confidential relationship exists between persons who contract to marry, and occupying such positions toward each other, concealment of material facts may be fraud. The suppression of the truth, when there is a duty to speak, is a fraud. Smith Frauds, § 9. There is a legal and moral obligation to communicate or disclose facts material to the contemplated marriage.

It was a material fact that defendant had been in St. John's Hospital in Canada for treatment of a mental or nervous disorder shortly prior to her

engagement to marry plaintiff, and especially in the light of her knowledge that her sister was then in an insane asylum. Her failure to act on the advice of relatives and tell plaintiff of her own condition and of the condition of her maniacal sister, after promising them so to do, and her denial to the witness Stewart that there was anything wrong with her health, indicated an intent to practice a fraud on plaintiff. In *Blank* v. *Blank*, 107 N. Y. 91, it was held that the representation by the defendant that she was a widow, whereas she had been collusively divorced from a former husband, who was still living, was such a misrepresentation of a material fact as would justify the court in vacating the agreement. In *Svenson* v. *Svenson*, 178 N. Y. 54, the court held that the concealment of a contagious hereditary venereal disease was a sufficient fraud, though, at the time of the trial, the defendant was cured. The case of *Domschke* v. *Domschke*, 138 App. Div. 454, held that chastity prior to the marriage, if insisted upon, may be made essential to the contract, and annulled a marriage because the defendant stated that she had been the wife of a man then dead and that he was the father of her child, whereas she had been his mistress and the child was a bastard. This was proposed as a test: if the fraud be such that, had it not been practiced, the contract would not have been made, or the transaction completed, then it is material to it. In *Keyes* v. *Keyes*, 6 Misc. Rep. 355, it was held that the defendant's misrepresentation that he was honest and industrious, when in fact he was a professional thief, was a sufficient fraud. In *King* v. *Brewer*, 8 Misc. Rep. 587, the defendant had kept a " poolroom " (which was punishable by imprisonment for one year or by a fine or both). He did not inform the plaintiff of this fact, and the marriage was annulled because of the fraud. In *Fontana* v. *Fontana*, 77 Misc. Rep. 28, the defendant represented she was

Supreme Court, June, 1920.     [Vol. 112.

a good respectable girl, whereas she was pregnant by another man, when the plaintiff married her. The marriage was annulled. In *Roth* v. *Roth,* 97 Misc. Rep. 136, the defendant had been divorced for adultery and forbidden to remarry. It was held that this case was within the rule that suppression of the truth, when there is a duty to speak, is a fraud, and that here the facts concealed were material to the contract. Judge Benedict (at p. 141) writes: "Capacity to contract is one of the most important elements in marriage. The fact that one assumes to enter into the marriage state is, in itself, almost a representation that one is under no legal disability to do so, that is, no disability which would render the marriage void as distinguished from voidable."

In *Weill* v. *Weill,* 104 Misc. Rep. 561, 562, Judge McAvoy writes: "In practice and modern acceptance of grounds for annulment the matters involving the essence of the consent to the material pact have been widened in construction to include suppressions, evasions, representations of previous condition of health, status, and even of wealth to an extent which was unknown to any system of jurisprudence based on Roman law. The rule now seems to be that if the fraud be such that, had it not been practiced the contract would not have been made, or the transaction of marriage completed, then it is material; but if it be shown or made probable that the same thing would have been done by the same parties in the same way if the fraud had not been practiced, it cannot be deemed material."

It seems to me there is an analogy in the foregoing authorities, which brings the facts in the instant case directly to the essence and materiality of the marriage contract.

The inquiry made by plaintiff at the very time of

their engagement to marry furnishes reasonable grounds for the belief that had defendant told him the facts about her own mental disorder and the insanity of her sister and brother, the marriage would not have been completed. It does not seem probable that he would enter into wedlock with her, if he had such knowledge.

Plaintiff having asked defendant at the time of his proposal of marriage if there was anything that would make life unhappy, he was entitled to a frank and full disclosure of defendant's condition. Her reply in the negative and failure to disclose the facts was a suppression of the truth and a misrepresentation of facts bearing on her physical and mental condition which were material to the contract of marriage.

Plaintiff had a right, not merely in *foro conscientiae* but *juris et de juri,* to have such information, and the defendant purposely withholding information of her own disease of brain or nervous system and of her insensate brother and of her mentally deranged sister, who was then in an asylum for the insane, was a concealment of material facts constituting, in my opinion, a sufficient fraud practiced upon plaintiff to absolve him from the contract and warrant the annulment of his marriage to the defendant.

Judgment for plaintiff.