HUGH COSTELLO, Plaintiff, *v.* ANN COSTELLO, Defendant.

Supreme Court, Kings County, November 7, 1934.

*Edward S. Moran, Jr.,* for the plaintiff.

*Joseph F. Clements,* for the defendant.

SMITH, J. The action falls within the provisions of section 1139 of the Civil Practice Act. That section provides that where the consent to a marriage has been obtained by fraud, the party whose consent was so obtained may maintain an action for the annulment of the marriage, unless at any time before the commencement of the action the parties voluntarily cohabited as husband and wife with a full knowledge of the facts constituting the fraud.

The complaint alleges the fraud consisted of (1) a false representation to plaintiff by defendant that by and through plaintiff she was in a pregnant condition, and (2) a false representation to plaintiff by defendant that she was single and had never been married to any other man. The complaint further alleges that these representations were made for the purpose of inducing plaintiff to give his consent to enter into the marriage state, that they had such effect, and that plaintiff would not have given his consent if he had known the truth.

There is a sharp conflict in the testimony. Plaintiff testified he had had sexual intercourse with defendant before they were married and that defendant thereafter told him she had become pregnant through him and that unless he married her at once she would have him put in jail and make a lot of trouble for him. Plaintiff also testified that defendant represented and led him to believe that she was single and had never been married. In the latter charge plaintiff is corroborated by his two sisters who assert the defendant also told them she had never been married.

Defendant, on the other hand, denies she had ever had intercourse with the plaintiff prior to their marriage or that she had ever told him she was pregnant or made any demands upon him to marry her or that she had threatened him in any way. She also testified that he was fully apprised of her former marriage and divorce and that plaintiff asked her to suppress these facts from his family. Defendant produced several witnesses in an attempt at corroboration.

In my opinion, the testimony of defendant and her witnesses is not entitled to much credence. In the light of all the circumstances, and considering the demeanor of the witnesses and the manner in which they testified, plaintiff's evidence is entitled to much greater consideration than that of defendant. It is quite apparent that plaintiff, a young man in his early twenties, was beguiled and coerced by the defendant into consenting to the marriage at a time when she thought he was the heir to a considerable fortune.

However, even accepting plaintiff's evidence with respect to defendant's representation of her pregnancy, plaintiff, nevertheless, is barred from maintaining this action on that ground. It appears clear that plaintiff and defendant cohabited as man and wife for some five years after plaintiff became aware of the falsity of defendant's representation concerning her pregnancy. And this is sufficient to defeat an action for annulment (Civ. Prac. Act, § 1139). Plaintiff, therefore, must be penalized, despite the fact that he remained with defendant only because he was reluctant to make public the true facts and feared to face the shame and disgrace.

On the second ground alleged, namely, the false representation that defendant was single and had never been married, I think plaintiff has established a cause of action to which there is no bar. He left defendant and refused to cohabit with her as soon as he discovered the fact that prior to her marriage to him she had been married to and divorced from a man by the name of Hayes who died some time after the marriage between plaintiff and defendant. Plaintiff discovered these facts in 1929 and he left defendant

almost immediately. Here there was no condonation or waiver of defendant's fraud.

While perhaps the fact of a prior marriage which has been lawfully dissolved and which is not a legal impediment to another marriage, may not always be material, yet in this case it went to the essence of plaintiff's consent to the marriage. It is clear from all the evidence, and particularly in view of defendant's pretended claim of pregnancy, that plaintiff consented to the marriage only because he was definitely led to believe that defendant had never been married and that he was the first man to have had sexual relations with her. Plaintiff, as his testimony shows, naturally had some difficulty in explaining his feelings in this delicate situation. However, the bearing and materiality of defendant's prior marriage on plaintiff's consent is made very clear from the following testimony given by plaintiff: " Q. Did you have any conversation with her about whether or not she had been married previously? A. I took that for granted that she was not married before, because, if I thought for a minute that she was married previously, I knew she would be too smart to tell me that she was married, because then I knew she would not deceive me. I thought that was the first time that anything like that happened. * * * Q. Suppose at this time at the City Clerk's office that she had answered that she had been married previously, would you have married her? A. I would not. Q. You did not know of the previous marriage when you married her? A. No, sir. Q. She never represented to you that she was a single woman? A. Yes, sir. Q. She said she was a single woman? A. She always represented herself as a single girl. Q. Did you ever ask her if she had been married before? A. I asked her during the course of conversation did she ever know anybody before? * * * Q. When you said ' know ' did you mean sexual intercourse? A. By knowing anybody, going out with any other man. Q. You used the words, ' Did you ever know anybody before you knew me ' — what language did you use? A. I said, ' Now, did you keep company with anybody before you knew me? ' That is what I meant, your honor. * * * Q. What did you mean by ' keeping company? ' A. By knowing, you know what I mean, keeping company; was I the first fellow that she ever kept company with, that had any, you know."

Although this testimony is given rather inartificially, it makes abundantly clear the fact that plaintiff consented to the marriage principally, if not solely, because he thought defendant, until she met him, was an unmarried woman who had never kept company with or *known* any other man.

That there is a relationship of trust and confidence between two people contemplating matrimony there is not the slightest doubt. (*Truiano* v. *Truiano*, 121 Misc. 635; *Weill* v. *Weill*, 104 id. 561; 26 C. J. Fraud, § 18.) And in such a relationship the concealment or failure to disclose a material fact or the suppression of the truth concerning a material matter is as grievous an offense as active misrepresentation. (*Weill* v. *Weill*, *supra*, p. 563; *Roth* v. *Roth*, 97 Misc. 136; 26 C. J. Fraud, §§ 9–18.)

In *Weill* v. *Weill* (*supra*), where one of the parties suppressed the fact of a previous marriage and its annulment, Mr. Justice McAvoy, then sitting at Special Term, New York county, expressed the duties of each and stated the law as follows: " The relations of the parties antecedent to the marriage contract are relations of trust and confidence, and when such relations exist it is not enough to keep silence with regard to the facts material to the contract about to be made or to make no false statement respecting the same. The affirmative duty exists of making a full and complete disclosure, if the contract is to be sustained. If previous marriage and an annulment thereof is a fact material to the marriage contract, then it is not enough that the party about to enter that contract should refrain from making a false affirmation with regard to it; the duty is imposed of making a full and free disclosure of his previous status in life. A decree of annulment will be made."

Mr. Justice Merrell of the Appellate Division, First Department, in *Rutstein* v. *Rutstein* (221 App. Div. 70), concerning the annulment of a marriage for fraud, says: " The decisions in this State have uniformly held that a marriage may be annulled for *any* fraud or deception which would invalidate or authorize the cancellation of *any* contract. (*DiLorenzo* v. *DiLorenzo*, 174 N. Y. 467; *Svenson* v. *Svenson*, 178 id. 54.) "

The rule as to the nature of the fraud which is sufficient to authorize an annulment of a marriage is stated as follows by Crouch, J., in *Shonfeld* v. *Shonfeld* (260 N. Y. 477): " Any fraud is adequate which is ' material, to that degree that, had it not been practiced, the party deceived would not have consented to the marriage ' (*DiLorenzo* v. *DiLorenzo*, *supra*, p. 471), and is ' of such a nature as to deceive an ordinarily prudent person.' "

Thus, a decree of annulment has been granted where the woman has misrepresented her prior marital status (*Blank* v. *Blank*, 107 N. Y. 91), or made misrepresentations as to her chastity (*Beard* v. *Beard*, 238 N. Y. 599), or where there has been suppression by a woman of the facts relating to her past marital status (*Roth* v. *Roth*, *supra*), or where one of the parties concealed the fact that prior to the marriage he or she was afflicted with or incapacitated

by a serious disease or had engaged in criminal activities. (*Svenson* v. *Svenson*, 178 N. Y. 54; *Rubman* v. *Rubman*, 140 Misc. 658; *Lapides* v. *Lapides*, 224 App. Div. 257; 228 id. 669; revd., 254 N. Y. 73.)

From these cases it is clear that the concealment of any fact material to the marriage may be sufficient cause for its annulment, and that the causes are not restricted to those mentioned above.

It is also clear, from all the circumstances in this case, that defendant's prior marriage and divorce were very material to plaintiff's consent, and that he would never have contracted the marriage if the true facts, instead of being suppressed and concealed, had been revealed to him.

Defendant contends that plaintiff cannot recover because he has failed to prove, even by his own testimony, " a direct and distinct representation made by defendant at the time of the marriage." This contention is entirely untenable. It is true that defendant did not make any outright or direct representation or declaration that she had never been married. Nevertheless, it is quite apparent that she did everything in her power, by her actions and by her conduct, to lead plaintiff to believe that she had never in her life known the married state.

The rule with respect to the manner or medium used to perpetrate a fraud is well expressed as follows in the dissenting opinion of Mr. Justice MILLER in *Ottinger* v. *Bennett* (144 App. Div. 525 [First Dept.]; based on this dissenting opinion, the Court of Appeals, in 203 N. Y. 554, reversed the judgment of the majority of the Appellate Division):

" It is familiar law that a fraudulent representation may be effected by conduct, by acts as well as by words, by silence when there is a duty to speak, by half-truths calculated to mislead, or by reckless statements made without knowledge. * * * [Citing cases.]

" The principle of the decisions is that a party is answerable for what he intends to accomplish; that one who intentionally deceives another to his injury, no matter how, is accountable for the wrong; that a party is liable for misrepresentations, either by conduct or by words, made for another to act upon, if they were calculated to deceive and if in fact they do deceive such other person into acting in reliance upon them to his injury. It is quite as easy to deceive by acts as by words and the deed is often more effectual than the word. But the law is not so blind or so absurd as to judge an act by the means regardless of the motive."

Fraud, justifying rescission, may be effected not only by *suggestio falsi*, but also by *suppressio veri*. In other words, it may be per-

petrated not only by the suggestion or affirmation of a falsehood, but also by the suppression or concealment of the truth. (Black Rescission and Cancellation, vol. 1, § 58.)

The law on this point is well stated by Kerr on Fraud and Mistake ([5th ed.] p. 62 *et seq.*) as follows:

" To constitute a fraudulent representation, the representation need not be made in terms expressly stating the existence of some fact which does not exist. If a statement be made by a man in such terms as would naturally lead the person to whom it was made to suppose the existence of a certain state of facts, and if such statement be so made designedly and fraudulently, it is as much a fraudulent misrepresentation as if the statement of an untrue fact were made in express terms.

" A man, moreover, who makes a representation is not only answerable for what he in his own mind intended to represent, but he is answerable for what anyone might reasonably suppose to be the meaning of the words he used. If a defendant has made a statement capable of two meanings, one false and one true, and if the plaintiff swears that he understood it in the false sense, the defendant will not be heard to say that he meant it in the true sense.

" A representation may be false by reason [not] only of positive misstatements contained in it, but by reason of intentional suppression whereby the information it gives assumes a false color, giving a false impression, and leading necessarily, or almost necessarily, to an erroneous conclusion.

" There is misrepresentation if a statement be so made that the acuteness and industry of the person to whom it is made is set to sleep, and he is induced to believe the contrary of what is the real state of the case." ·

To the same effect and supporting these statements of the law, see *Indianapolis, P. & C. R. R. Co.* v. *Tyng* (2 Hun, 311; affd., 63 N. Y. 653); *Lomerson* v. *Johnston* (47 N. J. Eq. 312; 20 A. 675); *Ottinger* v. *Bennett* (203 N. Y. 554).

Assuming, therefore, as the defendant so strongly urges, that even on plaintiff's own testimony she was not guilty of any active or direct misrepresentations, nevertheless, as her conduct clearly worked a fraud upon plaintiff, she is responsible both ethically and legally.

And even going further, and assuming there was no obligation on defendant's part, in the absence of inquiry, to make any disclosure of her prior marital status, yet the evidence shows she did make statements to the effect that she was single and had never kept company with any other man. By these statements

the defendant intended to and actually did give plaintiff the impression that she had never been married and had never had sexual intercourse. These utterances being true, perhaps, only as far as they went, constituted merely a partial or fragmentary disclosure. Such a partial disclosure giving plaintiff such a wrong impression, when coupled with the concealment of other material facts bearing on defendant's former status, was clearly fraudulent. It must be deemed fraudulent because the real intention was to deceive and defraud plaintiff and to make him succumb to defendant's threats and entreaties, and that intention was consummated.

With respect to the effect of a partial or fragmentary disclosure, Black on Rescission and Cancellation (Vol. 1, § 63) says:

" Although the circumstances of a particular case may be such that one of the parties is warranted in keeping silence concerning a material fact within his knowledge and which is unknown to the other party, yet if his concealment of it is accompanied by any false representations on his part, intended to deceive or mislead, it becomes fraudulent and furnishes ground for rescission or for relief in equity. * * *

" And it is an important part of this rule that if a person who is entitled to keep silent in regard to the subject of the contract volunteers any information at all, which may influence the decision of the other party, he is bound to disclose the whole truth, and a partial statement is a fraudulent concealment, though it may be true in itself, if it gives a false color to the whole, or if it purports to be the entire truth and yet involves the suppression of a material part."

To the same effect, see Kerr on Fraud and Mistake ([5th ed.] p. 64 et seq.; Brager v. Friedenwald (128 Md. 8; 97 A. 515); Van Houten v. Morse (162 Mass. 414; 38 N. E. 705); Von Au v. Magenheimer (126 App. Div. 257; affd., 196 N. Y. 510).

In Von Au v. Magenheimer (126 App. Div. 257), where the question at issue was the financial condition of a corporation, and the defendants had made certain representations which were literally true in order to induce the plaintiff to part with her stock in the corporation, the court stated: " It will not do to say that the statement that there had been heavy losses was literally true. The law does not suffer deceit to be practiced by any trick or device. The defendants at least owed the plaintiff the duty to speak the whole truth, if they spoke at all, not literally in words, but truthfully in substance. When they undertook to explain the condition of the company they were bound not to deceive her either by the suppression of the truth or by making statements which, though literally true, were calculated to deceive. They are

to be judged by what they intentionally induced her to think, not by what they literally said."

In the case at bar I believe that defendant failed to reveal to plaintiff the true facts concerning her prior marital relations. I also believe that she deliberately suppressed such facts and, by her arts and wiles, succeeded in giving plaintiff a false impression. There can be no doubt whatever, under the circumstances disclosed by the evidence, that such facts were material and that plaintiff would never have consented to the marriage if he had known them.

Plaintiff, therefore, on the second ground alleged in the complaint, is entitled to a decree of annulment of the marriage.