## TUCKER et al. v. BEAZLEY.

### No. 575.

Municipal Court of Appeals for the District of Columbia.

Feb. 6, 1948.

---

Charles J. King, of Washington, D. C., for appellants.

Francis J. Kelly, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Plaintiffs have appealed from a judgment rendered against them in an action for damages based on a charge of defendant's misrepresentation in connection with the sale to them of a rooming house business. The judgment was granted on defendant's motion at the end of plaintiffs' case.

For the plaintiffs the testimony was as follows: In October 1945, preliminary to entering into a written contract, plaintiffs were shown through the rooming house by defendant, accompanied by defendant's broker. As they came to each room defendant stated the monthly rental he was receiving for such room and Mrs. Tucker, one of the plaintiffs, made notes of the rentals stated by defendant. When they came downstairs they sat down together and Mrs. Tucker added up the figures stated by defendant, which came to a total of $297 per month. Defendant did not say whether or not such monthly income was in accordance with the rules and regulations of the Administrator of Rent Control and plaintiffs made no investigation of the subject.

Thereupon plaintiffs entered into a written contract with defendant for the purchase of the rooming house business, together with the chattels in the premises, for $4,000. At the same time and as part of the same transaction defendant, who owned the realty, gave plaintiffs a lease thereon for a two-year period with a renewal option of one additional year. (Such option was exercised by plaintiffs while this suit was pending, just a week before the date of trial.)

Soon after plaintiffs took possession they were summoned before the Rent Administrator and then for the first time learned that as to some of the rooms no rent ceilings had been established, and that as to some others ceilings had been established which were much lower than the rentals collected by defendant. The Administrator reduced the total rentals payable from $297 to $260 per month. Mrs. Tucker testified that prior to having received the information from the Rent Administrator she had no knowledge that the rentals quoted to her by defendant had not been legally established. Plaintiffs' suit was based on the difference between the $297 monthly income which defendant represented the business was producing and the $260 per month maximum ceiling established by the Rent

Administrator. They claimed this difference of $37 per month for 23 months, covering not only the period of the lease but also the renewal period under the option they had already exercised.

Moving for judgment at the end of plaintiffs' case, defendant urged that no fraud or misrepresentation had been proved because he was telling the truth when he stated that he had received a monthly income of $297; also that there was no evidence that he had made any statement that such monthly income was in accordance with the rules and regulations of the Rent Administrator. The motion, as we have said, was granted.

■ We think it was error to rule that plaintiffs had not made out a prima facie case and to decide against them without requiring answering evidence by defendant. Well-established and basic principles of law require a reversal.

■ We rule that when defendant represented that the total monthly rentals amounted to $297 plaintiffs were entitled to believe that such were *legal* rentals duly established under the District of Columbia Emergency Rent Act [1] and the regulations promulgated thereunder. Under the Act the Administrator's regulations and orders prescribed certain duties for rooming house operators, including the express duty of filing schedules and of having maximum rentals established. Thus the provisions of the Rent Act entered into and formed a part of the contract, as if they were expressly referred to or incorporated in its terms.[2]

■ Defendant therefore had no right to withhold from plaintiffs the highly material and important information that the $297 rental had not been lawfully approved. Though he was telling the literal truth, he was really telling only a half-truth. When he undertook to state the rental income he was bound by law to tell the whole truth without suppressing any material fact known to him. A half-truth may be as misleading as a statement wholly false.[3] As was said in an early District of Columbia case,[4] a misrepresentation "may consist as much in the suppression of what is true as in the assertion of what is false." And later, the same Court, in Tyssowski v. F. H. Smith Co., 35 App.D.C. 403, stated the law thus: "The gist of the action of deceit is the producing, with fraudulent intent, of a false impression upon the mind of the other party. It is unimportant, if this result is accomplished, whether the means employed are affirmative or negative, that is, whether they consist of words or acts, or amount to no more than a concealment or suppression of material facts peculiarly within the knowledge of the guilty party."

To us this situation seems highly analogous to one where a vendor reveals some defects in a property, and conceals or remains silent as to other defects, latent in their nature. In such a situation, as was ex-

[1] Code 1940, Supp. V, § 45—1601 et seq.

[2] Wood v. Lovett, 313 U.S. 362, 61 S. Ct. 983, 85 L.Ed. 1404; Monson et al. v. Fischer, 118 Cal.App. 503, 5 P.2d 628; Equitable Bldg. & Loan Ass'n v. Wolfangle et ux., 111 Cal.App. 119, 295 P. 388; Citizens Ins. Co. v. Barnes et al., 98 Fla. 933, 124 So. 722; Dollman v. Pauley, 202 Ind. 387, 174 N.E. 729; McWilliams v. Griffin et al., 132 Neb. 753, 273 N.W. 209, 110 A.L.R. 1039; see also annotation at 110 A.L.R. 1048.

[3] Restatement, Torts, Chap. 22, Sec. 529, cited with approval in Equitable Life Ins. Co. v. Halsey, 312 U.S. 410, 668, 61 S.Ct. 623, 85 L.Ed. 920; Farrar v. Churchill, 135 U.S. 609, 10 S.Ct. 771, 34 L.Ed. 246; Stewart v. Wyoming Cattle Ranche Co., 128 U.S. 383, 9 S.Ct. 101, 32 L.Ed. 439; Globe Steel Abrasive Co. v. National Metal Abrasive Co., 6 Cir., 101 F.2d 489; New York Life Ins. Co. v. Gay, 6 Cir., 36 F.2d 634, certiorari denied 284 U.S. 624, 52 S.Ct. 10, 76 L.Ed. 532; Thermoid Rubber Co. v. Bank of Greenwood, 4 Cir., 1 F.2d 891; Copper Process Co. v. Chicago Bonding & Ins. Co., 3 Cir., 262 F. 66, 8 A.L.R. 1477; Shepard v. City Co. of New York, D.C.Minn., 24 F.Supp. 682, appeal dismissed 8 Cir., 106 F.2d 994; Costello v. Costello, 155 Misc. 28, 279 N.Y.S. 303; Nasaba Corporation v. Harfred Realty Corporation et al., 287 N.Y. 290, 39 N.E.2d 243; Everett v. Gilliland, 47 N.M. 269, 141 P.2d 326; Cahill v. Readon, 85 Colo. 9, 273 P. 653; Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803; Dennis v. Thomson, 240 Ky. 727, 43 S. W.2d 18.

[4] Security Investment v. Garrett, 3 App.D.C. 69, 76.

pressly held in a recent case, the liability of the vendor is settled. Smith v. O'Connor, 66 App.D.C. 367, 88 F.2d 749.

There can be no doubt that in this case there was misrepresentation by suppression. (Naturally, we do not discuss matters of defense because no defense evidence was offered.)

Nor do we think that plaintiffs lost their rights by not conducting an independent investigation of the matter before signing the purchase agreement. Obviously they relied upon defendant's statement, and we think it is clear they had a right to so rely. At the time the contract was signed the Rent Act had been on the statute books for almost four years. Presumably every rooming house operator was familiar with it and should have complied with the regulations as to rent schedules. These purchasers were justified in assuming that there had been such compliance by their vendor. Or, stated somewhat more aptly, they were justified in assuming that their vendor had not violated the Rent Act. In these circumstances, the rule of caveat emptor does not apply and, as was said by the Supreme Court in Equitable Life Ins. Co. v. Halsey, supra [312 U.S. 410, 668, 61 S.Ct. 630], "in the circumstances of this case [a purchaser] is under no duty to make an independent investigation of the truth of" a vendor's representations.

The United States Court of Appeals for this District in a very recent case [5] summarized the applicable law thus:

"* * * where the purchaser has equal and available means for information and no fraud or artifice was used to prevent inquiry or investigation, there is a basis for the application of the rule of caveat emptor, *but where the vendor makes statements of fact concerning matters peculiarly within his knowledge for the purpose of inducing action by the vendee, the rule has no application.*

" 'He whose false representations have induced another to deal with him is not standing upon very firm ground when he takes the position that his victim ought not to have relied upon his false statements'."
(Emphasis supplied.)

We made a similar ruling in Goldsten v. Burka, D.C.Mun.App., 43 A.2d 712. In that case there was the contention, as there is here, that plaintiff was barred from recovery by the familiar recital in the contract that it contained the final and entire agreement between the parties and that they shall not be bound by any terms, conditions, statements or representations, oral or written, not therein contained. We rejected the contention in that case; and we reject it here, too.

Reversed with instructions to award a new trial.

HOOD, Associate Judge (dissenting).

I cannot agree that there was evidence of a fraudulent representation by the defendant. He stated the monthly rent he was receiving for each room. He did not state that these rents were established ceiling rents and plaintiffs did not ask if they were. Neither plaintiffs nor defendant made any reference to a rent ceiling.

Fraud must be shown by clear and convincing evidence. Public Motor Service, Inc., v. Standard Oil Co. of New Jersey, 69 App.D.C. 89, 99 F.2d 124. Defendant's statement was true and can be considered false only by implication. While fraud may be established by circumstantial evidence, I do not think it can rest on implication alone. Silence constitutes representation only when there is a duty to speak. It seems to me there was more duty on plaintiffs to inquire concerning rent ceilings than there was on defendant to speak of them. While the doctrine of caveat emptor may be less rigorously enforced today than formerly, I understand the law still requires a purchaser to use reasonable care for his own protection. If plaintiffs desired information regarding the rent ceilings, it was very easy and simple to ask for it. A call or visit to the Rent Administrator's office would have furnished complete and accurate information. It was a matter of public record.

---

[5] Lester v. Superior Motor Car, Inc., 73 App.D.C. 171, 172, 117 F.2d 780, 781. See also Bailey v. Smith, 57 App. D.C. 369, 23 F.2d 977.

As I see the case, there was no positive misrepresentation; there was no evasive answer to a direct question; there was no confidential relation; there was no concealment of that which was peculiarly within the seller's knowledge; and there was no effort, reasonable or otherwise, to obtain the information. I see no evidence of a fraudulent misrepresentation.

Furthermore, if it be assumed as correct that plaintiffs were entitled to believe that the named rentals were those established by law, there is no evidence that plaintiffs did so believe. They did not so testify. For all that appears from the record neither plaintiffs nor defendant gave any thought to rent ceilings at the time of their conversation. Misrepresentation in order to be actionable fraud must be accepted and relied upon. Rosenberg v. Howle et al., D.C. Mun.App., 56 A.2d 709. Reliance may be inferred without direct proof, but it cannot be inferred that plaintiffs relied on an implication in a statement unless it is first shown that they understood such implication.

I think the judgment should be affirmed.