**MICHAEL HOME EQUIPMENT CO., Inc.**
**v. McCAULEY.**

No. 1354.

Municipal Court of Appeals for the
District of Columbia.

Argued June 8, 1953.

Decided July 3, 1953.

Mark P. Friedlander, Washington, D. C.,
with whom Jacob Sandler, Washington,
D. C., was on the brief, for appellant.

S. Benjamin Cohen, Washington, D. C.,
for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

In a complaint denominated as one "In
Tort (Fraud)" plaintiff, now appellee, al-
leged that he went to defendant's show
room for the purpose of buying a 1952
model television; that defendant "know-
ingly, intentionally, recklessly, fraudulently
and maliciously" represented a certain
television set to be a 1952 model when in
fact it was not a 1952 model; and that
relying on said representation plaintiff pur-
chased said set at a price of $516. The
complaint further alleged that on delivery
the television "did not work" and defend-
ant removed it for repair and then "know-
ingly, intentionally, recklessly, fraudulently
and maliciously" returned another set rep-
resenting it to be the same set taken away.
Plaintiff alleged that by reason of his reli-
ance on the fraudulent misrepresentation
he was damaged in the sum of $516 and
further that defendant's fraud had caused
him "undue hardship, severe nervous
strain and mental anguish" and had dam-
aged his good credit standing, and plain-
tiff asked exemplary damages of $2,000.

The defendant answered, denying it had
represented the set to be a 1952 model and
alleging that, with the knowledge and con-
sent of the plaintiff, it had put a new chas-

sis in the set when the original chassis did not work satisfactorily. Defendant also counterclaimed for the unpaid balance of the purchase price.

At trial plaintiff testified that he bought the set on being assured it was a 1952 model and he received a trade-in allowance of $150 on his old set; that on delivery and hook-up the set did not operate and defendant, when notified, sent a service man who removed the chassis and a chassis was returned nearly a month later; that the set still did not operate and on further checking plaintiff found a ticket which showed the set to be a 1951 model. Plaintiff also testified that the set had never operated from the time it was bought and he repeatedly notified defendant of this fact and asked that the set be called for "so that the contract might be nullified." Documentary evidence established that the set was sold on a conditional bill of sale and an installment note was given by plaintiff for $366.-66, the difference between the purchase price and the trade-in allowance, and that plaintiff had paid approximately $40 on the note.

Defendant's testimony was that plaintiff made his own selection of the set he wanted and that it was delivered to plaintiff in its original carton; that there was no conversation with plaintiff regarding the year of the set; that when plaintiff complained that the set did not work properly the chassis was removed and a new chassis installed; and that plaintiff had refused to buy a service policy and understood that he was not entitled to any service.

At the conclusion of the case the trial court, sitting without a jury, made the following finding:

"The Court finds that the Plaintiff was entitled to have a set delivered to him in proper working order. The Court finds that the Plaintiff is entitled to the $150.00, the value allowed by the Defendant on the set traded in. Plaintiff is further entitled to $40.00 paid on the note and cancellation of the note he signed. Plaintiff is entitled to the sum of $200.00 punitive damages for the loss of use of his television set since the date of purchase. Defendant is entitled to get his set back from Plaintiff."

On that finding the court entered judgment for plaintiff for $390 and ordered the installment note cancelled.

The question presented by this appeal is whether the finding supports the judgment. It will be observed that plaintiff pitched his complaint on fraud. He so entitled his complaint and took pains to allege that the acts complained of were fraudulently accomplished. In his brief here he asserts that his action was one for fraud. However, the trial court made no finding of fraud. It did not find that the 1951 model was fraudulently represented to be a 1952 model; nor did it find that the substitution of a new chassis for the original one was fraudulently done. The finding of the trial court was simply that plaintiff was entitled to have a set delivered to him in proper working order and (impliedly) that such a set was not delivered. There was no allegation and no testimony even tending to prove that defendant fraudulently sold plaintiff a defective set. It is true that the complaint alleged that the set as delivered did not work and plaintiff also testified that the set never operated from the time it was bought. But, as we have said, the action was based on fraud and the judgment was evidently rendered on a basis of fraud since punitive damages were awarded. It seems obvious that plaintiff sought to bring his case within our ruling in District Motor Co. v. Rodill, D.C.Mun. App., 88 A.2d 489, to the effect that in an action for fraud or deceit growing out of a sale there may be an award of exemplary damages. The mere sale of a defective article does not establish fraud. Fraud must be clearly and convincingly shown. Ward v. Deavers, D.C.Cir., 203 F.2d 72, citing Public Motor Service v. Standard Oil Co. of New Jersey, 69 App.D.C. 89, 99 F.2d 124. Since the action was predicated on fraud and the judgment was awarded on the basis of fraud, the judgment cannot stand because there was no finding of fraud.

We may add that although plaintiff steadfastly clung to his claim that his action was one for damages, actual and

punitive, for fraud, there were injected into the trial some elements of an action for rescission for breach of implied warranty of fitness. If plaintiff seeks such relief he should amend to so allege. Issues not pleaded may be treated as if pleaded when they are actually submitted to the trier of the facts by express or implied consent of the parties, Campbell Music Company v. Singer, D.C.Mun.App., 97 A.2d 340, but the record discloses no notice to defendant of a claim for rescission for breach of warranty and we find in the record no consent by defendant to a trial of that unpleaded issue. The two remedies ought not to be confused. Rescission seeks to restore the status quo, but damages for fraud "must be measured by the usual tests of causality rather than by an effort to restore the status quo ante." Ward v. Deavers, supra, 203 F.2d at pp. 76, 77.

Reversed with instructions to grant a new trial.