101 A.2d 890 (1954)
SHAPIRO, Inc.
v.
BIMBLICH.
SHAPIRO, Inc.
v.
BENCICH et al.
Nos. 1406, 1407.
Municipal Court of Appeals District of Columbia.
Argued December 7, 1953.
Decided January 7, 1954.
*891 Jo V. Morgan, Jr., Washington, D. C., with whom John J. Carmody, Washington, D. C., was on the briefs, for appellant.
Mark P. Friedlander, Washington, D. C., for appellee Bimblich.
Philip Shinberg, Washington, D. C., for appellee Bencich.
Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.
CAYTON, Chief Judge.
The thousand-page transcript, covering a five-day trial, presents a confused picture of dealings between a builder and two electrical subcontractors in connection with the wiring of four houses being constructed by the builder. It also reveals manifold factual disputes with reference to almost everything that happened between the parties.
Bimblich first sued the builder, Shapiro, Inc., for a balance of $1713 claimed to be due on his contract. The second subcontractor, Bencich, sued for a balance of $1276.76. Shapiro filed a third-party complaint against Bimblich in the second suit, claiming that any recovery by Bencich would represent damages to Shapiro caused by Bimblich's breach of contract. The two suits were tried together and resulted in judgments in favor of both contractors. The cases are here on a consolidated record on Shapiro's appeals.

1. The appeal from the judgment for Bimblich.

Among the disputes between the parties was the question as to whether Bimblich knew in advance that air-conditioners to be installed in the houses were five-ton, five-horsepower units. The trial judge found that Bimblich had not been shown either the air-conditioning proposal or contract, and did not learn until after the work was well in progress that Shapiro planned to install five-ton units which would require higher amperage service than that called for in Bimblich's contract; that he then called on Shapiro to pay a higher sum for the additional work and material, which Shapiro refused to do. The trial judge, therefore, found "that the inability of plaintiff to finish his work was due to the defendant's change in the terms of the original contract without a proper adjustment of the increase in cost thereof, and that it was the fault of the defendant under all the facts that the contract with Bimblich was broken. The Court further finds that the computation of the electric service of 100 ampere was by defendant and agreed to by both parties and that plaintiff Bimblich entered into the contract on that basis and in accordance with computations made by the defendant." The court further found that Bimblich's failure to install certain fixtures and complete certain work on the contract was due both to the dispute between the parties and to the failure of defendant to furnish the fixtures. Certain extra work not required by the contract was found to have been ordered by Shapiro for which Bimblich was allowed recovery.
Shapiro challenges the correctness of the findings concerning the air-conditioning. He contends that the findings from which the trial judge concluded that Bimblich had no knowledge of the type of air-conditioning to be used were not supported by the evidence, and that certain contrary findings should have been made.
No useful purpose would be served by attempting a summary of the exhaustive testimony given at the trial. It is sufficient to say that though the testimony was conflicting in many respects, there was substantial evidence to support the findings made in the trial court. This disposes of Shapiro's contention that Bimblich was barred from recovery because he had impliedly warranted that the electrical service was sufficient for the requirements of the houses including five-ton, five-horsepower air conditioners. The evidence by no means compelled a finding that Bimblich knew, or should have known, that units of that size were to be used in the houses; indeed it warranted a finding that he was never told of the tonnage or horsepower, and discovered these facts much later. Nor was the trial judge required to find, as appellant seems to suggest, that an established custom in *892 the trade required Bimblich to make independent inquiry as to the electrical requirements of the equipment to be installed. He had a right to rely on the builder for such information.
Shapiro also assigns as error the failure of the trial court to make certain other findings of fact. These include findings that an additional sum should have been included in the counterclaim, that there was a wilful breach of contract, and that the work was not performed properly. These assignments are without substance. The findings of the trial court, when weighed against all the evidence in the case, were sufficient to inform the parties as to the basis of the decision.
Shapiro also contends that no recovery should have been allowed to Bimblich for extras because the contract provided that "No statements for extras will be honored * * * unless these statements are in accordance with written orders signed by the General Contractor and the Subcontractor." The trial court found that the extras were performed in accordance with oral orders of Shapiro or his superintendent. This was not denied by Shapiro. The allowance for extras was therefore proper. Such a provision in a written contract does not prevent the parties from making separate parol agreements regarding extras. Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, certiorari denied, 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745, Macri v. United States, 338 U.S. 820, 70 S.Ct. 63, 94 L.Ed. 497; Teer v. George A. Fuller Co., 4 Cir., 30 F.2d 30; Bartlett v. Stanchfield, 148 Mass. 394, 19 N.E. 549, 2 L.R.A. 625. See also, Mazza v. Russell, 47 App.D.C. 87.

2. The appeal from the Bencich judgment.
With reference to the claim of the second electrical subcontractor, Bencich, the trial judge found that he was put to work on the job after the dispute between Shapiro and Bimblich; that Shapiro hired him to complete the work on the four houses, but within two months discontinued his services and told him that the first subcontractor, Bimblich, was coming back on the job to complete it; that Shapiro orally directed Bencich to install the 200 amperage system and to perform certain other work; that under the oral contract his compensation was to be for labor and material plus "a reasonable profit"; and that Bencich was unable to complete his work because Shapiro stopped him. In awarding judgment to Bencich, the judge computed the amounts expended by him for labor and materials and for compensation for his assistant, and made allowances for materials left over and for work deliberately done by Bencich in an improper manner. In his memorandum the judge explained that since he had made an allowance on Shapiro's claim against Bimblich in computing judgment for Bimblich, there was no occasion to make the same allowance in the Bencich suit.
Much of what we have already said with reference to Bimblich applies to the errors assigned in connection with the judgment in favor of Bencich. Here, too, we are asked to rule that certain findings were contrary to or not supported by the evidence; here, too, the record wholly fails to provide any support for appellant's position. Each of the findings was based on substantial, though disputed, evidence. Additional findings which appellant now urges should have been made were not required by the evidence.
Shapiro also contends that because Bencich deliberately and maliciously breached a part of the contract he should not have been allowed any recovery. The breach referred to was the deliberate miswiring of a meter box by Bencich in a fit of anger, after he was discharged by Shapiro. This involved no danger to the houses, and did not substantially delay further construction. It was corrected at a cost of $30.81 for which the trial judge allowed credit to Shapiro. We think the course followed by the trial court was correct. Shapiro would have us require that Bencich forfeit over $1000 in labor and materials because of a minor defect corrected at nominal cost. Such a forfeiture *893 would not be justified by the circumstances of this case. Bencich faithfully performed his contract until he was stopped by Shapiro; there was no substantial breach of contract. Therefore, the only proper measure of damages was the cost of correcting the improper work. Turner v. Henning, 49 App.D.C. 183, 262 F. 637; United States ex rel. Johnson v. Morley Const. Co., 2 Cir., 98 F.2d 781, certiorari denied, Maryland Const. Co. v. U. S., 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 421; Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N.E. 889, 23 A.L.R. 1429. See also 3 Williston, Contracts, §§ 805 and 842 (revised edition). We adopt as the law of this case what the author said in the last section referred to: "It is a pretty severe doctrine that any conscious deviation from the contract, of however slight importance, is fatal to recovery upon it, even though there is no express condition. The question must to some extent be one of degree." We think the wilfulness of the breach was just one factor to be considered. The more important factors are the nature of the breach, its effect upon the remainder of the work, and, of course, its cost.
Judgments affirmed.