Adolfo SPARGNAPANI and Phyllis Spargnapani, Appellants,

v.

W. B. WRIGHT and G. L. Sarsfield, Appellees.

No. 1568.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 8, 1954.

Decided Dec. 16, 1954.

Godfrey L. Munter, Washington, D. C. with whom John Carroll Keating, Washington, D. C., was on the brief, for appellants. Godfrey L. Munter, Jr., Washington, D. C., also entered an appearance for appellants.

Harry L. Ryan, Jr., Washington, D. C., for appellee Wright.

No appearance for appellee Sarsfield.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Mr. and Mrs. Spargnapani bought a house from Sarsfield through the brokerage office of Wright. After taking possession they discovered that the heating plant was defective and unusable, and after unsuccessful demands for payment of repair costs sued the seller and the broker. Plaintiffs' testimony was that the broker's saleswoman had represented that the heating system was in good condition, that the oil burner was practically new and that so long as they kept oil in the tank they would have plenty of heat. The negotiations commenced in July or August, and the contract of sale was executed August 22, 1953. Their testimony (discussed in greater detail later) was that sometime in mid-October rusty water started leaking from the boiler and this leak was traced to a crack some four inches long in the top section of the boiler. There was evidence that the former owner, a Mrs. Hutchinson,[1] had caused the boiler to be "doped" with a sealing preparation, had the crack concealed by a black patch, and then had the entire boiler painted over with black paint which gave it a shiny, new appearance.

The broker's saleswoman testified that she made no representation to the Spargnapanis as to the age or working condition of the heating system, but admitted that she told them the house could be heated for a little over a hundred dollars a year, and that the walls and ceilings were insulated —this being the information she had gotten from Mrs. Hutchinson. She also admitted that she was trying to impress on them that the house could be heated very reasonably. She said she then had no knowledge of any defect in the heating system. The trial judge decided the case in favor of defendants, and plaintiffs bring this appeal.

In testing the correctness of the decision we have examined five separate findings contained in a memorandum opinion filed by the trial judge.

The first finding was that "defendants had no knowledge of the defect in the boiler." Conceding this finding to be accurate, it cannot be held decisive of the major issue, for the inescapable fact is that there was a bad defect in the boiler which had been artfully concealed. If the broker innocently represented that the heating plant was in workable condition and was mistaken in that representation, or made the representation without knowing whether it was true or false, the injured party may recover in an action for fraud. Darnell v. Darnell, 91 U.S.App. D.C. 304, 200 F.2d 747; Stein v. Treger, 86 U.S.App.D.C. 400, 182 F.2d 696; Tucker v. Beazley, D.C.Mun.App., 57 A.2d 191; Goldsten v. Burka, D.C.Mun.App., 43 A. 2d 712.

The same general principle applies to the judge's second finding that, "(2) defendants practiced no deception upon the plaintiffs with respect to the heating system, either by affirmative statements or by withholding knowledge of any concealed defects." We may assume that the broker was guilty of no deliberate deception and had no actual

1. Appellee Sarsfield, who sold to appellants, had bought the house from Mrs. Hutchinson through Wright, the same broker, but because of a change in his personal plans had never occupied it.

knowledge of the concealed defect. But on defendants' own evidence their selling agent did not disclaim such knowledge; on the contrary she represented that there was no defect when the opposite was true. The representation that the house could be heated for "a little over a hundred dollars a year" was flagrantly inaccurate, since the defect in the boiler made it impossible to heat the house at all, for any sum. "Fraud includes the pretense of knowledge when knowledge there is none." Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 444, 74 A.L.R. 1139. Here the broker displayed a "pretense of knowledge," conveyed to plaintiffs in the form of a representation, that if they bought the house they would be getting a functioning heating plant. Innocent though the pretended knowledge may have been, it was in fact baseless. The law does not, in such a situation, withhold its aid from one who has been led into a contract to his detriment.

■ The trial court also found: "(3) the plaintiffs were cognizant of the fact that they were purchasing an old house, and did not rely on the statements of the defendant as to the condition of the property; (4) plaintiffs twice inspected the house, once in the company of their own remodeling and redecorating agent." It is true that plaintiffs knew they were buying an old house, but we are unaware of any rule of law which says that one who buys an old house must expect to get a worthless heating system, particularly in the face of the representation discussed above. And the uncontradicted evidence was that the man who went with them was asked for advice only as to termite protection and redecorating,[2] and that they never discussed the heating plant with him. The finding that the purchasers did not rely on the broker's statements is contrary to the direct and uncontradicted evidence, such reliance being voiced in such plain expressions as,

"I didn't doubt it," "I believed it," and "we took her word for it." The finding was erroneous.

■ The trial judge found, "(5) plaintiffs were put on notice by the recent paint job to examine the boiler for any defects which might have been covered by the paint." This finding was based on an erroneous concept of law. It is in conflict with the rule laid down some years ago in Bailey v. Smith, 57 App.D.C. 369, 371, 23 F.2d 977, 979, as follows: "'There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence, and refuses them redress, whenever they fail to act on that presumption.'" These purchasers testified that the saleswoman gave them specific assurances that the heating system was very good and that they only needed to keep oil in the tank to obtain heat. Her own testimony was that she did not make those particular statements; but as we have seen she admitted telling them that the annual heating cost would be little more than one hundred dollars. Whichever version was accepted by the trial judge, there was no basis in law or logic for ruling that the purchasers were required to investigate and make tests to determine what was under the shiny black paint on the boiler. It is hardly reasonable to expect one buying a house in August, when a heating plant is shut off for the season, to subject it to tests calculated to determine how well it will work when winter comes.

■ For the same reasons we decline to rule, as appellees would have us do and as the trial court did, that *caveat emptor* applies. We agree with the trial court that "The mere sale of a defective article does not establish fraud on the part of the seller."[3] But we have more than that naked hypothesis here. We have an article with a

2. The advertisement which attracted their attention to the property stated that the house "needs decorating; reasonably priced accordingly * * *" but made no mention of any repairs being needed on the heating plant.

3. Citing Michael Home Equipment Co. v. McCauley, D.C.Mun.App., 98 A.2d 101.

concealed defect, which was at the very least (adopting defendants' own version) represented to be in functioning condition when it was in fact completely inoperable and had to be replaced. This pretense of knowledge on the part of seller's agent, this vital though innocent misrepresentation, being in the eyes of the law a fraud, left no room for the application of *caveat emptor*.[4]

■ We do not agree with appellees that because there were factual disputes at the trial there is nothing for us to review here. It is, of course, not surprising that plaintiffs told a stronger and more detailed story of misrepresentations, and that defendants' version was less damaging to themselves. But damaging it was, as we have already explained in considerable detail: damaging enough to constitute actionable fraud. Moreover, there is recent and unassailable authority that "[a] finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' " McAllister v. United States, 75 S.Ct. 6, 8.[5] We note also that the Supreme Court has denied certiorari in a case in which the second circuit ruled that where the evidence is partly oral and the balance is written, or deals with undisputed facts, then the appeals court may ignore the trial judge's finding and substitute its own, if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful. Orvis v. Higgins, 2 Cir., 180 F.2d 537, certiorari denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595.

In the case before us there was a letter, written by the broker, stating that his office had been told by the former owner that the heating plant was in good condition;

and this letter was in contradiction of the testimony that the saleswoman told these purchasers nothing about the subject because she knew nothing about it. But we have not based our decision on that written admission or on contradictions between writings and verbal testimony.

Nevertheless, the cases just cited fortify us in our conclusion that in any view of the evidence as a whole, the answer is not doubtful and the broker Wright and his principal Sarsfield must be held answerable in damages to these plaintiffs.

■ There is a dispute between the parties as to the proper measure of damages. Defendants seem to contend that compensation should be on the basis of the difference between the price paid for the house itself and its depreciated market value resulting from the discovered defect. That is a test frequently employed, and one we have in some circumstances approved.[6] But it is not the only or inevitable test. We think it would be just as wise and proper in this case to take the direct and simple approach, and award damages on the basis of the actual cost of replacing the defective boiler, with suitable recognition of the age of the boiler and of the further useful life it would have had if it had not cracked. See Shapiro, Inc., v. Bimblich, D.C.Mun.App., 101 A.2d 890; Fortune v. Evans, D.C.Mun. App., 58 A.2d 919.

If the parties cannot agree on an amount which would meet these tests, then damages are to be assessed by the trial court on the basis of the evidence already adduced, or by taking further testimony on the subject.

Reversed, with instructions to award judgment to plaintiffs against both defendants.

4. See Lester v. Superior Motor Car, Inc., 73 App.D.C. 171, 117 F.2d 780; Tucker v. Beazley, D.C.Mun.App., 57 A.2d 191.

5. See also, United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

6. Kraft v. Lowe, D.C.Mun.App., 77 A.2d 554; Horning v. Ferguson, D.C.Mun.App., 52 A.2d 116.