Suzanne HAVILAND, Appellant,

v.

Beverly DAWSON and J. C. Chatel,
Appellees.

No. 3651.

District of Columbia Court of Appeals.

Argued April 5, 1965.

Decided June 2, 1965.

John L. Laskey, Washington, D. C., with whom Thomas Penfield Jackson, Washington, D. C., was on the brief, for appellant.

Joseph V. Gartlan, Jr., Washington, D. C., with whom Stephen Friedlander, Washington, D. C., was on the brief, for appellees.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

In September 1960 appellee Beverly Dawson purchased a residence on Lot 868 in the District of Columbia, an irregular plot surrounded on all sides by other residential real estate, including Lots 901 and 9. The property was located between Arizona Avenue and Hurst Terrace and the only access to it from a public roadway was by way of a steep concrete stairway ascending from Arizona Avenue. During her occupancy, appellee Dawson had motor vehicle and pedestrian access from Hurst Terrace to her home by crossing the paved portion of adjoining Lot 901 although no easement for that purpose had been acquired from the owners thereof.

In February 1961 Mrs. Dawson listed the premises for sale with her own real estate firm and with that of appellee J. C. Chatel. In time, she contracted to sell the property to one Mandel who rescinded his agreement before settlement when she was unable to provide him with a right-of-way across Lot 901. On May 4, 1961, following negotiations with the owners of Lot 901, she obtained the conveyance of a ten-foot right-of-way "solely for the purpose of ingress and egress to the property of the Grantee by motor vehicle and by foot so long as the property of the Grantee is used and occupied for residential purposes," which was duly recorded May 12, 1961.

Prior to the acquisition of this right-of-way, Mrs. Haviland, then a nonresident, contacted Mr. Chatel to assist her in locating and buying a home in Washington. He showed her the Dawson residence but did not inform her of the absence of an access of right from Hurst Terrace although he was aware that this deficiency had caused the loss of a prior sale of the property. Mrs. Haviland advised Mr. Chatel that she would buy the residence and he filled in a standard printed sales contract, indicating a selling price of $25,000, to which he added, at his own instance, "Purchase includes permanent right of way ten feet wide for access through Hurst Terrace." He read the typed addendum over the telephone to Mrs. Dawson's lawyer who assured him it was "all right" to incorporate this provision in the contract. Mr. Chatel then submitted the agreement to Mrs. Haviland without comment as to the right-of-way provision. On May 3, 1961, she signed the contract. Mr. Dawson, after reading the entire agreement and increasing the sale price to $26,000, also signed it. Mrs. Haviland accepted the increase in price and on May 4, 1961, again signed the contract. Mr. Chatel attended the settlement at the title company on behalf of Mrs. Haviland where he was shown a copy of the right-of-way conveyance. He brought the plat therefor, enclosed in an envelope, to Mrs. Haviland and gave it to her without comment. At the same time he procured her signature on the title company settlement sheet.

During the summer of 1961 Mrs. Haviland reached her home on Lot 868 by driving across the paved area on Lot 901 and parking several feet from the corner of her lot. The owners of Lots 901 and 9 never complained of this practice until appellant's son came to live with her in September 1961 and also parked his car in the same area. Both adjacent property owners then objected and terminated any parking privilege on their land. At that time Mrs. Haviland for the first time learned that the right-of-way was not ten-feet wide for its length but dwindled to a width of about three feet for its final ten feet.

In October 1961 Mrs. Haviland was offered $28,500 for her property, but when the restricted extent of the easement on Lot 901 was disclosed, the prospective pur-

chaser refused to consummate the sale. She thereafter sold Lot 868 to the owner of Lot 9 for $25,000 in March 1962.

In May 1962 this suit was filed by Mrs. Haviland against appellees seeking damages for untrue and false representations in the sale of the property to her and for breach of contract. In defense appellees asserted, *inter alia*, the doctrines of merger laches and estoppel. Expert testimony regarding the value of Lot 868 with and without the benefit of the right-of-way as set forth in the contract of sale was first received by the trial judge but subsequently stricken from the record. A judgment upon findings adverse to Mrs. Haviland was then entered from which this appeal ensued.

 Appellant contends that the trial court erred in finding she had failed to establish fraud through concealment by either appellee. There was no evidence of independent fraud by Mrs. Dawson as property owner in the sale, although she could have been held vicariously liable upon a proper showing of fraudulent conduct by Mr. Chatel within the scope of his activities as broker. Turner v. Brewer, 54 App.D.C. 363, 364, 298 F. 685, 686 (1924). However, the mere sale of a defective article does not establish fraud by the seller. Spargnapani v. Wright, D.C.Mun.App., 110 A.2d 82 (1954); Michael Home Equipment Co. v. McCauley, D.C.Mun.App., 98 A.2d 101 (1953). In an action as here, where the fraud is based upon an alleged concealment or deceit relating to the collaterally agreed permanent right-of-way in the contract of sale, the evidence must be clear and convincing that the deceit practiced or concealment made was with the intent to deceive the purchaser. Pywell v. Haldane, D.C.Mun.App., 186 A.2d 623, 624 (1962). The record in the present case reveals no clear showing that either appellee acted with an intent to deceive appellant with respect to the nature of the right-of-way. At most, the testimony, with reasonable inferences to be drawn, was in conflict and

presented a factual determination for the trial court. We hold that the dismissal of the fraud count as to both appellees was proper.

 We next consider the question of breach of contract. As appellee Chatel was not a party to the contract of sale, the charge of breach of contract relating to the collateral right-of-way agreement is limited to appellee Dawson. She covenanted to provide a permanent ten-foot right-of-way to appellant's residence for motor and pedestrian access from Hurst Terrace. She actually conveyed one which at its terminus was reduced to a width of about three feet, thus defeating the complete ingress and egress to appellant's property by automobile. Parking in the right-of-way was not expressly authorized and a right-of-way does not *ipso facto* insure a right to park thereon. Penn Bowling Recreation Center v. Hot Shoppes, 86 U.S.App.D.C. 58, 179 F.2d 64, 16 A.L.R.2d 602 (1949). Appellant does not seek rescission of the contract, but asks damages for the failure of the vendor to comply with the collateral agreement to furnish a permanent right-of-way in accordance with the contract terms. Mrs. Dawson argues she substantially performed the covenant and therefore did not break her contract—that the deviation from the terms of the agreement was *de minimus*. We disagree. Since parking rights were not conferred by the right-of-way, the only performance less than that called for by the contract that would amount to "substantial performance" was the granting of a right-of-way sufficiently wide to permit complete automobile access to Lot 868. The right-of-way as conveyed defeated any reasonably adequate motor vehicular access as intended by the contract. The record amply supports without contradiction that appellee Dawson as a matter of law breached the terms of her agreement with appellant to convey and provide a permanent right-of-way by motor vehicle to Lot 868 from Hurst Terrace.

■ Mrs. Dawson contends, however, that under the doctrine of merger, the contract in question was satisfied by the delivery to and acceptance by appellant of a deed to the property. As a general rule of law, this would be correct and the provisions of the contract of sale would be considered to have merged in the subsequently-delivered deed. Chicago Title & Trust Co. v. Wabash-Randolph Corp., 384 Ill. 78, 51 N.E.2d 132, 137 (1943); 6 Corbin on Contracts § 1319. In this jurisdiction, we recognize a limitation to this general rule. Acceptance of the deed does not terminate any covenants or stipulations in the contract which are not in their nature satisfied by delivery of an instrument whose purpose is to transfer title to the property. Libby v. Trako Builders, 100 U.S.App.D.C. 146, 243 F.2d 252 (1957). In our view, the delivery and acceptance of a deed by appellant did not bar a claim for failure to convey a permanent ten-foot right-of-way for automobile access from Hurst Terrace. This was an undertaking independent of the conveyance of title to Lot 868 and survived delivery of the deed. Hence, no merger took place. Stack v. Commercial Towel & Uniform Service, 120 Ind.App. 483, 91 N.E.2d 790, 795 (1952); Dawson v. McKinnon, 226 Iowa 756, 285 N.W. 258, 263 (1939). Accordingly, the trial court erred in holding that "the general rule of merger of the contract into the deed applies."

■ In cases involving breach of contract due to defective performance, the law requires that the party injured should be placed in the same position as if there had been no breach. Guthrie v. Greenfield, D.C.Mun.App., 109 A.2d 783, 784 (1954). In the case before us, Mrs. Haviland bought Lot 868 with a definite provision in her contract for motor vehicle access thereto by easement of a designated ten-foot right-of-way over adjacent land. Because of the defect in the easement as conveyed, the value of the property purchased was diminished. The damages which she is entitled to recover by reason of the failure to convey an easement meeting the terms of the contract of sale are the actual losses suffered therefrom. The measure of such damages under the circumstances is the difference between the contract price paid, concededly $26,000, which purported to cover the conveyance of a permanent right-of-way, and the fair market value of the same property without benefit of the right-of-way. Quick v. Pointer, 88 U.S.App.D.C. 47, 186 F.2d 355 (1950); 92 C.J.S. Vendor and Purchaser § 604. Since portions of the evidence relating to damages were stricken from the record, the case must be remanded for rehearing, but only as to the issue of damages as we have held appellee Dawson liable for breach of her contract with appellant.

We have considered other alleged errors and find them without merit.

Affirmed as to appellee J. C. Chatel; reversed as to appellee Dawson and remanded for trial only on the question of damages to be awarded appellant against appellee Dawson for breach of contract.