Marina ZOOB, Appellant,

v.

Xavier JORDAN, Appellee.

No. 01–FM–1336.

District of Columbia Court of Appeals.

Argued Nov. 12, 2003.

Decided Feb. 5, 2004.

Armin U. Kuder, Washington, for appellant.

Before FARRELL and WASHINGTON, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Marina Zoob appeals from a Domestic Relations Branch order covering divorce, custody, visitation, spousal support, attorney's fees, and property distribution. Only the property is at issue here. Appellant Zoob argues that her former husband, appellee Xavier Jordan, successfully completed a gift transferring to her half-interests in each of two cooperative apartments and in an associated parking space.[1] The trial court found that Jordan had manifested the requisite intent to make the transfers, and no one disputes that Zoob had accepted them if made. But the court also found that because Zoob's name did not appear on either apartment's "title," Jordan had failed to effect the transfer and that the apartments accordingly remained his alone. We conclude, to the contrary, that Jordan's efforts to transfer half-interests in the two apartments to Zoob were effective to accomplish their delivery to her as a gift. But we also conclude that his actions were not sufficient to effect delivery of her claimed interest in the parking space. We thus reverse in part and affirm in part.

## I.

The parties were married in England on August 16, 1996, and had one child, Ines. They separated in the Spring of 1998 and, in the following October, entered into a voluntary agreement that purported to be a final settlement of all property claims and was incorporated in an order of the High Court of Justice in London. The trial court concluded that this U.K. settlement agreement disposed of the marital property, a ruling that the parties do not contest. Our analysis, therefore, proceeds from the premise that Zoob and Jordan were no longer married, and thus that their dispute over property is not governed by domestic relations law.

Pursuant to the settlement agreement and court order, Jordan paid certain expenses relating to their daughter Ines's education and support. The agreement and order also required Jordan to pay Zoob the equivalent of $290,000 on or before January 1999, subject to accomplishment of certain other conditions (including an order granting an absolute divorce). No judgment of absolute divorce was ever entered in England, however, and in early 1999 the parties began to consider reconciliation. Jordan paid Zoob the $290,000 in April 1999, and after Jordan received an offer for work in Washington, D.C., the two traveled there together in June to look for a place to live. They selected the "Mendota" cooperative apartment building at 2022 20th Street, N.W. Sometime later, while vacationing in Spain with Zoob, Jordan briefly traveled to the District of Columbia and purchased apartment 31 in the Mendota. Soon thereafter, in September, Zoob and her daughter from a previous

---

1. Appellee Jordan has not filed a brief on appeal.

marriage, as well as Ines and Jordan, moved to the District. Three months later, while Zoob was traveling in England, Jordan bought apartment 32 in the same building.

Joyce Rhodes, an employee of the Edmund Flynn Co., which prepares and maintains ownership and transfer documents for the Mendota cooperative, testified at trial about the process of buying an apartment at the Mendota. First, buyer and seller sign a "cooperative unit sales contract." Next, the buyer must be approved by the cooperative association board. The buyer then attends settlement and closes on the apartment. Finally, the buyer signs a "co-operative apartment ownership contract," which the cooperative board president then signs on behalf of the board. That contract is retained by the buyer (or by the buyer's lender in case of a mortgage) and serves as the buyer's evidence of the "right of perpetual use and enjoyment" of the designated apartment subject to various obligations (such as monthly assessments) specified in the contract. It is the functional equivalent in a cooperative regime of "title" or "deed" to the property.

Both ownership contracts for apartments 31 and 32 were signed by Jordan alone. However, one of the closing documents, the "Statement of Ownership" for apartment 32—best described as a cover sheet, with a copy of the ownership contract attached, used to register ownership on the cooperative association books—had the following handwritten notation at the bottom: "Note: To be amended later to reflect joint ownership by Xavier Jordan and Marina Zoob (wife)." Furthermore, Jordan submitted e-mail and telephone requests to the Mendota Cooperative Association in mid-December 1999, asking that Zoob's name be added to the "deeds" (meaning the ownership contracts) for both apartments 31 and 32. Zoob's name accordingly was typed onto the ownership contract for each apartment and, thereafter, each contract was signed on behalf of "The Mendota Apts. Inc." by its president, Scott Weiner.

In 2000, relations again soured between the parties. In July of that year, Zoob obtained a temporary protection order against Jordan, who proceeded to obtain the same against Zoob. The two cases were consolidated and the court entered a consent temporary protection order. During the proceedings, Zoob lived in apartment 31 and Jordan in apartment 32. On November 9, 2000, Zoob filed a complaint for divorce alleging voluntary and mutual separation of the parties. She also claimed that he reconciliation with Jordan had abrogated the British order, effectively restoring her claim to marital property under District of Columbia law. The trial court issued Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce on June 11, 2001. The court amended that order with an order docketed on September 21, 2001, from which this appeal is taken.

## II.

In its ruling, the trial court upheld the British order and concluded that "any property acquired by the parties subsequent to the issuance of the British Consent Order that is not covered by that order is the sole property of the party who acquired it."[2] The court credited Zoob's contention that the parties had agreed to purchase apartment 31 jointly, as evi-

2. The trial court also granted Zoob, among other things, sole physical and joint legal custody of the child, Ines, and child support payable in accordance with the preexisting British order. These other rulings have not been appealed.

denced by the fact that they both had looked at the property as well as the fact that Zoob had relinquished her residence in London. The court concluded nonetheless that because Jordan had paid for the apartments with his own personal funds— one with his own cash held free and clear, the other with borrowed funds secured by a mortgage solely in his name—he was the sole owner of each. Jordan was ordered to reimburse Zoob $12,446.66 for expenditures she had made to renovate apartment 31, and Zoob was given thirty days to vacate.

On September 21, 2001, after each party had filed a motion contesting the other's claimed interests in the two apartments (and in a parking space for apartment 31), the trial court ruled for Jordan. The trial court agreed with Zoob that the documents of record evidenced Jordan's intent to make Zoob a joint owner of each apartment, but the trial court further concluded that despite this intention Jordan had failed to effect a transfer because he had not placed Zoob's name on the ownership documents. In short, because "the properties were never actually titled to her," there was no evidence of joint acquisition or ownership.[3]

### III.

In resolving an appeal from a non-jury trial, we "may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (2001). "This means that a trial court's findings of fact will not be disturbed unless they are clearly erroneous." *Cahn v. Antioch Univ.*, 482 A.2d 120, 128 (D.C.1984) (citation omitted).

A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court is left with a "definite and firm conviction" that a mistake has been made. *Spargnapani v. Wright*, 110 A.2d 82, 85 (D.C.1954) (citation omitted).

Zoob contends that she is entitled to a fifty percent joint ownership interest in each of the apartments. In her post-trial Motion to Alter or Amend Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce, Zoob asserts that she had acquired that interest in each "by gift or transfer," and that "she has an equitable interest based on the parties' agreement, Mr. Jordan's expressed intent, and her exclusive use" of apartment 31. The trial court, in its September 2001, amended ruling, failed to address directly the question whether ownership interests in the apartments had been given or otherwise transferred to Zoob; the trial court merely stated that "the trial record does not support the plaintiff's position" and agreed with arguments advanced in Jordan's opposition. For its part, Jordan's opposition supplied three arguments against Zoob's position: that the "totality of the evidence" does not reflect that Zoob obtained an ownership interest by way of gift or transfer; that Zoob's testimony to the effect that Jordan's failure to give her gifts contributed to the failure of the marriage is inconsistent with alleging that Jordan had conveyed a gift of property; and that "neither Ms. Zoob's belief, nor Mr. Jordan's intention (which he subsequently changed), abrogate the parties' settlement agreement, nor give Ms. Zoob any legal or equitable claim" to the properties. While we agree (because Zoob does not contest on appeal) that the parties' British settlement agreement precludes consideration of

3. The trial court also increased the amount Jordan owed Zoob for renovations and made

additional rulings not at issue here.

the apartments as marital property, we must conclude that the trial court's dispositive ruling—that Jordan failed to convey any ownership interest to Zoob because "the properties were never actually titled to her"—is wrong as a matter of law.

▆ Preliminarily we note that although Zoob, in the trial court, claimed ownership by "gift" or other "transfer,"she has limited this appeal to the question whether Jordan made a gift of the properties. Theoretically, of course, a party may also receive a transfer of property under a contract based on consideration, or in satisfaction of an equitable claim. On this record, however, the trial court rejected—and Zoob no longer maintains—her equitable claim that the apartments were marital property. As to the contractual possibility, the trial court did make findings that "the parties agreed to jointly purchase apartment 31," and that Jordan's "$60,000 down payment on unit 31 solely from his separate funds" was "made on behalf of both parties" since it was "intended to be remuneration" to Zoob for a sum that she had expended on behalf of both of them for a Russian employee. Nonetheless, Zoob does not contend on appeal that she was party to a joint purchase that made Jordan the proverbial "straw man" holding on her behalf a joint half-interest in apartment 31 (and 32)—a contention, were she to pursue it, that presumably would require sorting out how much she still owed Jordan for the property. Accordingly, Zoob's case turns entirely—despite the foregoing trial court findings—on whether Jordan transferred the claimed interests by gift.

▆ The essential elements of a gift are donative intent, delivery, and acceptance. *Ross v. Fierro,* 659 A.2d 234 (D.C. 1995); a mere promise to make a gift is unenforceable. Thus, Zoob has the burden to prove each element was established in the trial court proceedings. *Id.* at 238

(citations omitted). As to the first element, we have held that " '[i]n order to prove donative intent, it must be shown from the evidence that the donor clearly and unmistakenly intended to permanently relinquish all interest in and control over the gift." ' *Id.* at 239 (quoting *Dorsey v. Dorsey,* 302 Md. 312, 487 A.2d 1181, 1184 (1985)). In the present case, because the gift allegedly was a joint ownership interest in the properties, Zoob need show only that Jordan intended to relinquish all interest and control as to the joint interest claimed. The trial court made nine factual findings that, when taken together, demonstrate that Jordan had intended to transfer the claimed ownership interests in the cooperative apartments to Zoob. In addition to the first two findings quoted above, the court found:

> Third, the plaintiff's role as general contractor for the renovation of unit 31 strongly suggests that it was intended that she be a joint owner. Fourth, the plaintiff's contribution of a sizable sum of money toward the renovation supports her claim that she believed she would be a part owner. Fifth, the defendant's admission that unit 32 was purchased with the intent to convert the two units into one residence favors the plaintiff's claim that unit 32 was purchased with the intent of that unit also being owned jointly by the parties. Sixth, the notation on the Statement of Ownership document that was signed by the defendant during the settlement on unit 32 on December 2, 1999, contains the statement "[t]o be amended later to reflect joint ownership by Xavier Jordan and Marina Zoob (wife)." Plaintiff's Exhibit 4. Seventh, a communication from the defendant to the president of The Mendota Apartments, Inc. on December 9, 1999, requesting "(1) Board approval to put Marina's name on ownership deed

for 32" and (2) Board approval subject to approval by lender to put Marina's name on deed for 31 (since this one has mortgage) ..." Plaintiff's Exhibit 28. Eighth, the defendant's referral to the two apartment units as "our apartments".... Finally, the defendant's recent acquisition of another residence only several blocks away from the Mendota apartment building, which the court construes as inconsistent with the defendant's alleged belief that there was no agreement that the plaintiff would be a joint owner in the Mendota building. *Collectively the evidence supports the plaintiff's position.* [Emphasis added.] The trial court concluded, however, that because the property still was "titled solely in the defendant's name," Zoob had failed "to prove her position that she is a joint owner. At best, ... the documents merely show that the defendant intended to make the plaintiff a joint owner."

The trial court's findings, supported by record evidence, are sufficient to sustain the trial court's conclusion that Jordan intended to grant Zoob joint ownership of both apartments. Although the court did not use "gift" terminology, its conclusion that "the defendant intended to make the plaintiff a joint owner" had to mean, on this record, that Jordan intended for Zoob to receive a joint half-interest in each apartment, without further consideration from her—and thus to that extent a gift. There can be no question that Zoob accepted whatever gift was made—if sufficiently "delivered." The only issue remaining, therefore, is delivery. More specifically, did the trial court err in concluding that Jordan failed to deliver the

intended gift because of a failure to add Zoob's name to the "title" of each apartment?

■ Delivery can be accomplished by bill of sale or other written evidence of the transfer. *Smith v. Acorn,* 32 A.2d 252 (D.C.1943). Delivery is evidenced by acts or words or both. *Ratsch v. Rengel,* 180 Md. 196, 23 A.2d 680 (1942). "Proof of delivery is indispensable, and 'if the thing be not capable of actual delivery, there must be some act equivalent to it.'" *Ross,* 659 A.2d at 239 (quoting *In re Russell's Estate,* 385 Pa. 557, 123 A.2d 708, 712 (1956) (additional citations omitted)).

■ Contrary to the trial court, we conclude as a matter of law that the evidence of record compels a finding that Jordan delivered to Zoob the intended gift of a joint ownership interest in each of the Mendota cooperative apartments, 31 and 32. Jordan arranged for written notation on the "Statement of Ownership" for apartment 32 stating that the ownership contract was to be amended to reflect Zoob's joint ownership. Thereafter, he repeatedly requested that Zoob's name be added to the apartment ownership "deeds" (meaning the ownership contracts, which function as titles to the apartments and are surrendered by the owner upon sale).[4] As a result, the "Co-operative Apartment Ownership Contracts" for apartments 31 and 32 were both signed and approved by the cooperative association board president, Scott Wiener, after Zoob's name had been added, reflecting the board's approval of Zoob as joint owner.

---

4. Jordan sent e-mail communications to the Cooperative Board president, Scott Weiner, dated December 9 and 15, 1999. The December 9 e-mail requests, in part, "(1) Board approval to put [Zoob's] name on the ownership deed for 32; (2) Board approval subject to approval by lender to put [Zoob's] name on deed for 31 (since this one has a mortgage)." Additionally, Joyce Rhodes testified about several phone conversations regarding Jordan's request that Zoob's name be added to the ownership documents for both apartments.

It is true that Ms. Rhodes, who prepared and handled the closing documents for the cooperative board, testified that the usual procedure for adding a second name to ownership documents was not followed. Usually, in adding a name, Ms. Rhodes would reissue the ownership contract in the names of both owners, each of whom would sign. Then the board president would sign, as would the board secretary attesting the president's signature. Here, although Zoob's name appeared on both ownership contracts, with board approval reflected by its president's signature, neither Zoob's nor the secretary's signature appeared on either document. There is no evidence of fraud, however, nor does anyone question the validity of board president Weiner's signature evidencing implied actual authority to approve Zoob's co-ownerships on behalf of the board. Nor was there any testimony to the effect that Zoob's signature assuredly had to be added, or the contract otherwise amended, to validate ownership interests arranged for her by Jordan with her undoubted acquiescence and the cooperative board's approval. Indeed, given the state of the documents reflecting ownership interests in Zoob, there can be no doubt that if a third party wished to purchase Mendota apartments 31 and 32, the cooperative association would not transfer these properties, and the prospective purchaser would not accept and sign ownership documents for them, without Zoob's agreement and participation. The cloud on a title without her signature on the sale contract would be heavy indeed. Finally, Jordan's intention to make the transfer was so unequivocal, as the trial court findings make clear, that any irregularity in the usual procedure for adding a second name to ownership documents does not preclude a ruling that, at least for purposes of gift law, the delivery was sufficient to establish that a gift was made. *Duggan v. Keto,* 554 A.2d 1126, 1135–1136 (D.C.1989). There may be cases in which intent to make a gift is sufficiently ambiguous that every formality of a property transfer would have to be accomplished to make that intent, as well as delivery, clear enough to establish a completed gift. But this is not such a case.[5]

In sum, as to apartments 31 and 32 of the Mendota apartment building, we conclude that the trial court's ruling as to delivery—that the property remained "titled solely in the defendant's name"—was erroneous as a matter off act and law. Zoob's name appeared, with board approval, on the "Co-operative Apartment Ownership Contract"—the only "title" there could be—for each apartment. Because appellee Jordan thus made a completed gift of both apartments, we must reverse the trial court's order and rule that Zoob is a joint, half-owner of Mendota cooperative apartments 31 and 32. *Spargnapani,* 110 A.2d at 85.

■ With respect to the parking space, however, we cannot say that the trial court's findings were clearly erroneous or its conclusions wrong as a matter of law. D.C.Code § 17–305(a); *Cahn v. Antioch Univ.,* 482 A.2d at 128. The parking space was not included in the ownership documents for either apartment; it required an altogether separate transaction. And there is no evidence of record demonstrating delivery of an ownership interest in the parking space as a gift to Zoob, whatever Jordan's intent may have been. Accord-

---

5. In concluding that there was a gift here between the parties, absent Zoob's signature on the ownership contract, we do not address other situations, such as a claim against an apartment by a lienor, or by the cooperative board itself, when the putative owner has not signed the ownership contract and has claimed no interest in the apartment.

ingly, we affirm the judgment as to the parking space.

*Affirmed in part, reversed in part.*