CRESCENT PROPERTIES, Appellant,

v.

Margol INABINET, Appellee.

No. 03–CV–1449.

District of Columbia Court of Appeals.

Argued Nov. 10, 2005.
Decided April 20, 2006.

Morris R. Battino, Washington, DC, for appellant.

Eliza I. Stefaniw, for appellee.

Before RUIZ, Associate Judge, and BELSON and TERRY,[*] Senior Judges.

BELSON, Senior Judge:

Appellant, Crescent Properties,[1] brought an action against appellee, Margol Inabinet, seeking a judgment for possession of her rental unit under the District of Columbia Residential Drug–Related Evictions Act of 1990 ("the RDEA").[2] In its complaint, Crescent Properties alleged that Ms. Inabinet's apartment was used as a drug haven. In a bench trial, the trial court ruled in favor of Ms. Inabinet, finding that Crescent Properties had established that Ms. Inabinet's apartment had been a drug haven, but failed to prove that

---

[*] Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Appellant filed suit in Superior Court under the name "Crescent Properties," not identifying itself as a corporation, partnership or any other type of entity. A witness described it as the managing company for the apartment building in question. On this record, we will assume that it is a legal entity capable of bringing suit.

2. D.C.Code §§ 42–3601–3610 (2001).

the unit remained a drug haven. On appeal, Crescent Properties argues: (1) the trial court incorrectly applied the RDEA when it required Crescent Properties to prove that the property currently remained a drug haven; and (2) the trial court's finding that the property was no longer a drug haven was clearly erroneous. Finding no error, we affirm.

## I.

Crescent Properties manages a four-unit building at 812 Otis Place, N.W. in the District of Columbia. In December 2000, Ms. Inabinet moved into the building with her daughter, Erica. On August 5, 2003, Crescent Properties filed a complaint for possession of real estate, alleging that Ms. Inabinet's apartment was used as a drug haven.

At trial, three witnesses testified that Ms. Inabinet's apartment had a reputation in the neighborhood as the site of heavy drug activity. All three further testified to witnessing acquaintances of Ms. Inabinet's daughter, Erica, using drugs in or around Ms. Inabinet's apartment. Two of the witnesses claimed to have seen Ms. Inabinet's daughter personally using drugs. According to one of the witnesses, a known drug dealer named "Chico" was a frequent guest at Ms. Inabinet's apartment.

Ms. Inabinet testified that she never personally used illegal drugs. She admitted that Erica, who had mental health problems, may have abused drugs and alcohol, but claimed that Erica never used drugs in her presence. Ms. Inabinet denied having personal knowledge of drug activity in her apartment.

Ms. Inabinet testified that on March 29, 2003, over four months before the suit was brought, her daughter suffered a heart attack, and remained hospitalized thereafter. She stated that the heart attack left Erica "brain dead." No witness testified to observing any drug activity after that date, nor had Chico been seen on the premises since February or March of 2003.

The property manager testified that he had more recently seen "the same drug users" congregate around Ms. Inabinet's back porch. Ms. Inabinet and the property manager testified, however, that a short fence made the backyard accessible to the public, while a broken lock allowed access to the porch from the yard. According to Ms. Inabinet, it was impossible for her to detect the presence of others on the porch while she was in the apartment, because she always kept the blinds drawn.

During closing argument, counsel for Crescent Properties asserted that, to grant Crescent Properties relief, the trial court "must find by a preponderance of the evidence the property *was* a drug haven." (Emphasis added). The trial judge corrected him, observing that the proper inquiry was whether the property "*is* a drug haven." (Emphasis added). When he made his findings of fact in open court, the trial judge stated that he was required by the statute to consider evidence of the discontinuance of a drug haven or nuisance. He pointed out, however, that such evidence would not prevent him from granting relief to Crescent Properties. Although the trial judge found "ample evidence" that Ms. Inabinet's apartment had been a drug haven, he concluded that the evidence did not support a finding that the apartment remained a drug haven after Ms. Inabinet's daughter was hospitalized. The judge stated that he was "satisfied given the medical condition of the daughter that the problem has gone," and that any evidence suggesting continued use was not sufficient to satisfy him.

## II.

 Crescent Properties argues in effect that the trial judge incorrectly construed the RDEA to provide that the con-

trolling determination is whether a property *is* a drug haven or a nuisance, not whether a property *was* a drug haven or a nuisance. Because this case requires an interpretation of the RDEA, we must review the matter *de novo*. *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 944 (D.C.2003) (citing *In re Estate of Louise Green*, 816 A.2d 14, 16 (D.C.2003)). In interpreting a statute, "we must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning. ... [I]n examining the statutory language, it is axiomatic that 'the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979)). "In appropriate cases, we also consult the legislative history of a statute." *Abadie v. District of Columbia Contract Appeals Bd.*, 843 A.2d 738, 742 (D.C.2004).

The RDEA, codified at D.C.Code §§ 42–3601–3610 (2001), provides a mechanism for "eliminating drug trafficking in housing accommodations." *Cook, supra*, 825 A.2d at 945. The statute enables a housing provider to bring an action in the Landlord and Tenant Branch of the Civil Division of the Superior Court for recovery of a rental unit alleged to be a drug haven or nuisance. D.C.Code § 42–3602(a) (2001).[3] According to D.C.Code § 42–3602(a), "recovery or eviction shall be ordered if the Court has determined, by a preponderance of the evidence, *that the rental unit is a drug haven or that a nuisance exists.*" (Emphasis added). D.C.Code § 42–3602(a)(1)-(7) provides a list of the types of evidence that the trial court must consider in determining whether a property is a drug haven or a nuisance exists on the premises.[4]

The statute defines "Drug Haven" as "a housing accommodation, or land appurtenant to or common areas of a housing accommodation where drugs are illegally stored, manufactured, used, or distribut-

---

3. References to "the Court," throughout the statute, are to the Landlord and Tenant Branch of the Civil Division of the Superior Court. *See* § 42–3601(6).

4. According to D.C.Code § 42–3602(a):
 In making the determination that the rental unit is a drug haven or that a nuisance exists, the Court shall consider:
 (1) Whether a tenant or occupant of the rental unit has been charged with a violation of the Uniform Controlled Substances Act or the Controlled Substances Act due to activities that occurred within the housing accommodation that contains the rental unit, or has violated a term of parole or probation for a previous conviction under the Uniform Controlled Substances Act or the Controlled Substances Act;
 (2) Whether the rental unit has been the subject of more than one drug-related search or seizure that has resulted in the arrest of a tenant or occupant;
 (3) Whether a firearm has been discharged within the rental unit;
 (4) The testimony of a witness concerning the possession, manufacture, storage, distribution, use, or the attempted possession, manufacture, storage, distribution, or use of an illegal drug by a tenant or occupant in the housing accommodation that contains the rental unit;
 (5) The general reputation of the property to corroborate testimony based on personal knowledge or observation, or evidence seized during the execution of a search and seizure warrant; provided, that this shall not, in and of itself, be sufficient to establish the existence of a drug haven or nuisance;
 (6) Evidence that the drug haven or nuisance had been discontinued at the time of the filing of the complaint or at the time of the hearing, which evidence will not bar the granting of appropriate relief by the Court; or
 (7) Any other relevant and admissible evidence that demonstrates that the rental unit is or is not a drug haven or nuisance.

ed." D.C.Code § 42–3601(8). It defines "Nuisance" as follows:

a property that is used:

(A) By persons who assemble for the specific purpose of illegally using a controlled dangerous substance;

(B) For the illegal manufacture or distribution of:

(i) A controlled dangerous substance; or

(ii) Drug paraphernalia, as defined in § 48–1101(3); or

(C) For the illegal storage or concealment of a controlled dangerous substance in sufficient quantity to reasonably indicate under all the circumstances an intent to manufacture, distribute, or dispense:

(i) A controlled dangerous substance; or

(ii) Drug paraphernalia, as defined in § 48–1101(3).

D.C.Code § 42–3601(15).

■ The trial court pointed out that the ultimate determination under the RDEA is whether the property *is* a drug haven, not whether it *was* a drug haven. The plain language of the RDEA supports this interpretation. The legislature framed the controlling provisions entirely in the present tense: the RDEA provides that the trial court must order recovery or eviction if it determines that "that the rental unit *is* a drug haven or that a nuisance *exists*." D.C.Code § 42–3602(a) (emphases added). It further defines a drug haven as a property where drugs *are* illegally stored, manufactured, used, or distributed, and a nuisance as a property that *is* used for various drug-related activities. *Id.* § 42–3601(8), (15).

■ It is significant that the statute lists among the types of evidence the court "shall consider" in determining whether a property is a drug haven or a nuisance exists, "[e]vidence that the drug haven or nuisance had been discontinued *at the time of the filing of the complaint or at the time of the hearing* ...." D.C. § 42–3602(a)(6) (emphasis added). This language is non-discretionary; the statute requires the court to consider each enumerated factor as to which evidence is admitted. *See Cook, supra,* 825 A.2d at 946.

■ The various provisions of the RDEA can best be harmonized if the statute is read as requiring the trial court to consider evidence of discontinuance at the time of the filing of the complaint or the time of the hearing as one factor in the ultimate determination of whether a rental property is a drug haven or nuisance, but also read as providing that some evidence of discontinuance, of itself, will not preclude a finding that the property is a drug haven or nuisance. Consistent with this reading of the plain language of the statute, even if it appears that drug activities have temporarily ceased in and around a rental unit, the trial court may still, after considering all of the enumerated factors, determine by a preponderance of the evidence that the property remains a drug haven and find for the plaintiff. If, however, the court determines that the cessation of the drug activities should reasonably be deemed permanent and that the property therefore is no longer a drug haven, then the court must find for the defendant.

Crescent Properties suggests, however, that such an interpretation of the RDEA would run contrary to the intent of the legislature in adopting the statute. As support, it cites dicta from *Cook,* in which we quoted from the legislative history of the original 1990 version of the RDEA. That history explained that the original statute "was designed to permit 'housing providers, resident associations and other citizens [to] initiate expedited eviction proceedings against tenants when there is a preponderance of evidence that rental

units *have been* or are being used for illegal drug activities.'" 825 A.2d at 945 (emphasis added) (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, COMMITTEE REPORT ON BILL No. 8–194, THE RESIDENTIAL DRUG-RELATED EVICTIONS ACT OF 1990, AMENDMENT IN THE NATURE OF A SUBSTITUTE, at 2 (January 24, 1990)).

However, Crescent Properties fails to take into account significant differences between the original version of the RDEA and the current statute.[5] Unlike the most recent version of the statute, the 1990 version defined a drug haven as "a housing accommodation, or land appurtenant to or common areas of a housing accommodation where drugs are illegally stored, manufactured, used, or distributed *during the 180–day period that precedes the time that an action is commenced pursuant to this subchapter.*" D.C.Code § 45–2559.1(2) (1990) (amended 1996) (current version at D.C.Code § 42–3601(8) (2001) (emphasis added)). The original RDEA further provided that the discharge of a firearm or a drug-related search and seizure that resulted in the arrest of a tenant or occupant must have occurred in the rental unit within the 180–day period preceding the filing of the complaint to qualify as evidence that a unit is a drug haven. *Id.* § 45–2559.2(a) (1990) (amended 1996) (current version at D.C.Code § 42–3602(a) (2001)). The 1990 statute, moreover, did not specifically require the court to consider evidence of the discontinuance of a drug haven or nuisance at the time of the filing of the complaint or the time of the hearing.

When the legislature amended the RDEA in 1996, it eliminated all references to the 180–day period preceding the filing of the action. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 11–70, THE "ABATEMENT OF CONTROLLED DANGEROUS SUBSTANCES ACT OF 1996," at 3–4 (April 17, 1996). It also added the language that required the court to consider evidence of the discontinuance of a drug haven or nuisance, while providing, as we have noted, that such evidence does not prevent the court from granting relief. *Id.* at 4.

When it amended the statute, the legislature could have retained the 180–day requirements or explicitly required recovery or eviction whenever the court finds that the property has been a drug haven or that a nuisance previously existed. The legislature could have in effect excluded any consideration of the discontinuance of drug activity. It chose instead to recast the relevant portions of the statute in the present tense and require the court to consider the discontinuance of drug activities.

■ We hold, therefore, that § 42–3602 requires the trial court to determine whether the plaintiff has established, by a preponderance of the evidence, that a rental unit in question is a drug haven or that a nuisance currently exists there. In determining whether the property is a drug haven or a nuisance exists, the trial court must make findings of fact, or a jury must reach its verdict, based upon a consideration of all of the seven categories of evidence enumerated in § 42–3602(a)(1)-(7), to the extent that any are applicable. The court must consider, along with the evidence that is admitted within the other six categories, evidence of the discontinuance of a drug haven or nuisance at the time of the filing of the complaint or the time of the hearing. *Id.* § 42–3602(a)(6).

■ It may be that in contesting the allegation that a rental unit is a drug haven, a tenant will introduce evidence that the use of the rental unit as a drug haven has been discontinued. Such evidence should be scrutinized carefully by

5. The original version of the RDEA was codified at D.C.Code §§ 45–2559.1–2559.9 (1990).

the finder of fact, and may be found not to be conclusive with respect to whether the rental unit remained a drug haven as of the time of trial. The factfinder must consider not only whether the unit has been used for illegal drug activity, but also whether it is likely to be used for that purpose in the future.[6] Plainly, a rental unit need not be used daily, or even weekly, for the illegal storage, manufacture, use or distribution of illegal drugs to qualify as an existing drug haven as of the time of the hearing. Moreover, as the trial judge recognized, the use of the present tense in the statute does not narrow the focus of the controlling inquiry to the specific hour or day on which the hearing is held. Rather, it refers to the conditions that exist at the "time" of the hearing. With respect to whether there had been a permanent discontinuance of the drug activity prior to the time of the hearing, a recent interruption of such activity as the result of some external force or influence, such as a police raid, rather than a cessation brought about by the action or circumstances of the tenant, is entitled to relatively little weight in determining whether a drug haven still exists.[7] If the factfinder concludes that the cessation of drug activity is a temporary reaction or "cover," or has been imposed from without, and that the circumstances that led to the existence of the drug haven still remain, then the factfinder may find that the rental unit remains a drug haven at the time of the hearing.

▇▇▇ Applying the foregoing to the present case, we hold that the trial court did not err in ruling that, in order to prevail, Crescent Properties was required to establish that Ms. Inabinet's property currently remained a drug haven or nuisance at the time of the hearing. In deciding that issue, the court considered the evidence of illegal drug use at and around the rental unit up until the time of trial, evidence of the discontinuance of that use, and the tenant's explanation of the significant change in circumstances that supported her position that the unit was not a drug haven at the time of the hearing.

## III.

▇▇▇ After considering all of the evidence, including evidence of the discontinuance of drug activity in and around Ms. Inabinet's unit, the trial court found that Crescent Properties failed to establish by a preponderance of the evidence that Ms. Inabinet's apartment remained a drug haven. Crescent Properties argues that the trial court's finding was clearly erroneous. "In resolving an appeal from a non-jury trial, we 'may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it.'" *Zoob*

6. There is an element of prediction involved in deciding whether a cessation of illegal drug activity is temporary or permanent. Judges, and juries as well, are called upon to make such determinations in a variety of proceedings. Judges and juries must do so, for example, in civil commitment proceedings. *See* D.C.Code § 21–545(b)(1)-(2) (2005 Supp.). Judges are also called upon to make such determinations in other proceedings, for example, in setting conditions of pretrial release, *see* D.C.Code § 23–1322; in so-called *Bolton* hearings, *see* D.C.Code § 24–501(d)(1)-(2) (2001); *Bolton v. Harris*, 130 U.S.App. D.C. 1, 395 F.2d 642 (1968); and in family law cases involving the best interests of the child. *See, e.g.*, D.C.Code § 16–914 (2001); D.C.Code § 16–2353(b) (2001).

7. We observe that a cessation during the course of litigation brought about by the entry of a preliminary injunction under D.C.Code § 42–3603 could not be viewed as removing the enjoined activity from the reach of the statute, as it would actually occur during the course of a two-stage legal action of short duration, and thus the enjoined activity could qualify as current drug activity.

*v. Jordan,* 841 A.2d 761, 764 (D.C.2004) (quoting D.C.Code § 17–305(a) (2001)). "This means that a trial court's findings of fact will not be disturbed unless they are clearly erroneous." *Id.* (citing *Cahn v. Antioch Univ.,* 482 A.2d 120, 128 (D.C. 1984)). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with a 'definite and firm conviction' that a mistake has been made." *Id.* (quoting *Spargnapani v. Wright,* 110 A.2d 82, 85 (D.C. 1954)). Furthermore, when reviewing the decision of a trial court sitting in a bench trial, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Wright v. Hodges,* 681 A.2d 1102, 1105 (D.C.1996) (citation omitted).

 The trial court found that the drug-related activity in and around Ms. Inabinet's apartment had ceased as a result of the serious medical condition of Ms. Inabinet's daughter, Erica, who was hospitalized in March 2003. Although the property manager testified that Ms. Inabinet's porch was still the site of substantial foot traffic, the trial court found that Crescent Properties had failed to adduce sufficient evidence to establish that the property was still a drug haven. Neither of these findings was clearly erroneous. There was testimony that, following her hospitalization, Ms. Inabinet's daughter had never returned to Ms. Inabinet's apartment, but had lived in a series of nursing homes. She had experienced a heart attack and was "brain dead." The court found that she was incapacitated. The trial court could reasonably infer, therefore, that she would never return to Ms. Inabinet's apartment to resume her previous activities. The property manager's testimony concerning the more recent comings and goings on or near Ms. Inabinet's porch was ambiguous and, in any event, had to be considered along with the evidence that Ms. Inabinet's porch area was easily accessible to the public. On this record, we do not conclude that the trial court's judgment was plainly wrong or without evidence to support it. *Zoob, supra,* 841 A.2d at 764.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.[8]

*So ordered.*

---

8. Crescent Properties argues, in the alternative, that Ms. Inabinet failed to establish, by a preponderance of the evidence, any of the grounds upon which a tenant, against whom there is entered a finding that the tenant's rental unit is a drug haven, can avoid a final order of eviction. D.C.Code § 42–3604(c) (2001). We need not consider this argument, however, because no such trial finding was made.